THE FIRST NATIONAL BANK OF GALESBURG

*v.*

JOHN S. CLARK *et al.*

*Filed at Ottawa October 31, 1892.*

1. PARTNERSHIP—*new enterprise entered upon by three of four partners—liability of the fourth.* The fact that A and three others were partners in the publishing of two newspapers in M., and of carrying on at that place a general printing business, will not preclude such three other persons from entering into an independent scheme for the publication of a newspaper in G.; and if A does not join in such new enterprise, but, on the contrary, refuses so to do, and expressly disclaims in

advance any liability growing out of the same, and the contract for the new enterprise is signed by the three partners as individuals, and not on behalf of the old firm, such partner so refusing to join in the contract will not become liable for the debts of the new firm, unless, through some fault or negligence on his part, money or property is parted with or services rendered on the faith of his credit.

2.  Where three of four partners engaged in the publication of papers accept a proposal to publish a daily paper in a different place, and the other partner consents, in a writing attached to the acceptance, to the three partners making the agreement for the new enterprise, but states in such written consent that he assumes no liability contained in the acceptance, he will not become a partner in such undertaking, and will incur no liability for the debts and contracts of the new firm ; and it matters not that the offer so accepted by the three was made to all the members of the the old firm.

3.  Practice in the Supreme Court—*error will not always reverse.* Where the evidence clearly shows that the defendant is not liable, and the court trying the case without a jury finds for him, the refusal of correct propositions of law by the court as not applicable to the evidence can work the plaintiff no substantial detriment, and will not constitute reversible error.

Writ of Error to the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Knox county ; the Hon. Arthur A. Smith, Judge, presiding.

The Monmouth Printing Company was organized on February 1, 1886, as a limited partnership, for the purpose of publishing the *Monmouth Atlas,* a weekly newspaper, and the *Evening Gazette,* a daily newspaper, and doing a general printing business, at Monmouth, in Warren county, Illinois. The partnership, when first organized, was composed of George G. McCosh and Samuel S. Clark as general partners, and John S. Clark as a special partner, but afterwards, in 1887, Cyrus J. Wood was admitted as a third general partner, in accordance with the terms of the original partnership agreement.

In April, 1888, a committee appointed by citizens of Galesburg consulted with McCosh and Wood in regard to publishing the *Evening Gazette* at Galesburg. John S. Clark, when consulted, was opposed to the proposed enterprise. After-

wards a written agreement or guaranty was prepared, and it was signed by fifty citizens of Galesburg. Said instrument in writing, omitting signatures, was as follows:

"Galesburg Club,
Galesburg, Ill., *April 19, 1888:*

"In consideration of Messrs. C. J. Wood and G. G. McCosh and J. S. and S. S. Clark, who are the proprietors of the *Evening Gazette,* removing said paper from Monmouth, Ill., to Galesburg, Ill., where they agree to publish a daily newspaper, independent in politics, they agreeing to discontinue the publication of said daily paper in Monmouth, removing their presses, machinery and printing materials which is now operated in connection with their daily newspaper, to the city of Galesburg, Ill., we, the undersigned, hereby promise and agree that their said newspaper shall receive a subscription list (at five dollars per year) aggregating at least $1000, to be paid in advance, at least within ten days after the first issue of the said newspaper in the city of Galesburg; and also we guarantee advertising to the extent of $1000, by representative wholesale firms (at the rate of twenty-five cents per inch) that do not usually advertise in the local papers, or in lieu thereof we will secure additional subscriptions to said paper for any deficiency which may occur in procuring such wholesale advertising. We further guarantee that in case said newspaper is so removed and published, and said proprietors should require more money than they obtain in the regular business of publishing said paper, then that we will procure for them, for the first year of such paper's publication in Galesburg, whatever sum they may require in said business, not exceeding $5000, upon their joint note or notes, the principal and interest upon whatever sum may be borrowed to be paid by the proprietors of said newspaper.

"This is signed with the understanding and agreement that fifty or more responsible signers are procured to this agreement before its delivery.

"Now, in compliance with the above guarantee, we hereby agree to pay each our proportion of any sum which may be necessary to make good to any firm or corporation furnishing said publishers of said newspaper mercantile credit upon the strength of the above guarantee: *Provided, however,* that it is expressly understood that our said liability under this and the above guarantee is only to the extent of $100 each, and that upon the payment of $100 each we are and shall be discharged from all liability under these agreements, and further that this paper may be used as collateral security for any sum so borrowed."

· Thereupon the following written agreements were made and signed, one by the said Wood, McCosh and Samuel S. Clark, and the other by the said John S. Clark:

"D. W. Aldrich and other citizens of Galesburg, Illinois, having obtained subscriptions to the *Evening Gazette* to the amount of $1000, payable within ten days from the first issue of said *Evening Gazette* in Galesburg, obligated themselves to secure advertisements ($1000) from wholesale firms, or subscriptions in lieu thereof, payable within thirty days, and entered into an agreement to procure mercantile credit to the limit of $5000 for the undersigned S. S. Clark, G. G. McCosh and C. J. Wood, owners and proprietors in part of the *Evening Gazette,* a daily newspaper published at present at Monmouth, Ill., we, on our part, hereby agree that in consideration thereof we will carry out the spirit of the proposition made to us in good faith to the said D. W. Aldrich and others, viz.: that we will as soon as practicable abandon the printing of the *Evening Gazette* at Monmouth and remove the same to Galesburg, and locate and publish it in that city, taking from the Monmouth office, or procuring elsewhere, all presses, type and other fixtures necessary for such publication, reserving the right to continue the publication of the *Monmouth Atlas* at Monmouth, and to retain there whatever machinery may be

necessary for that purpose, and also reserving the right of managing the separation of the property and the removal of a portion thereof in such manner as may seem to the management of the *Evening Gazette* to best preserve the value of the property, it being understood that the *Evening Gazette* shall continue to be independent, to publish the United Press dispatches daily, and that it shall be devoted to advancing the interests of Galesburg, and strive to advance the city's prosperity, and that the *Evening Gazette* office, when so located in Galesburg, shall be prepared to issue, and will issue, a daily afternoon paper that shall maintain at least its present standard of excellence, and it being understood, also, that all matters of extending the facilities of said office in any direction shall be left to future consideration.

Sam S. Clark,<br>
G. G. McCosh,<br>
C. J. Wood.

"I, John S. Clark, a silent partner in the Monmouth Printing Company, by which company the *Evening Gazette* is published at Monmouth, consent to the making of the above agreement by my partners, without myself assuming any of the obligations therein contained.

Jno. S. Clark."

In the latter part of May, McCosh and Wood moved to Galesburg, and opened a printing office there, and published the *Evening Gazette*, the first number being issued on the 25th day of May. Samuel S. Clark remained in Monmouth, and remained in charge of the printing office there, and printed and issued therefrom the weekly *Atlas*, and also an *Evening Gazette*, dated Monmouth. The business at Galesburg was conducted in the name of "*The Evening Gazette*." In that name an account was opened with the First National Bank of Galesburg, appellant herein. The subscriptions to the paper, etc., were paid at the bank and credited to the *Evening Gazette*, and the checks on the bank were made in the name *Evening Gazette*, per McCosh or per Wood, as the case might be. The

guaranty contract made by fifty citizens of Galesburg, and also the contract signed by McCosh, Wood and Samuel S. Clark, with the memorandum at its bottom signed by John S. Clark, were placed in the hands of the bank when the account was first opened, as collateral security for any indebtedness or over-drafts of the *Evening Gazette.*

The checks drawn on the bank exceeded in amount the sums paid in or deposited to the credit of the *Gazette.* On or about the 10th day of July, 1888, three promissory notes were made to the bank to cover the over-draft existing at that date,—one dated June 5, for $1000, one dated June 16, for $1000, and one dated July 10, for $2000, all bearing eight per cent interest. Said notes, when executed and delivered, were each signed as follows: "*The Evening Gazette,* per G. G. McCosh, C. J. Wood." Thereafter, at the request of officers of the bank, McCosh added the name, "Monmouth Printing Co." On August 3, 1888, another note for $1000 was made to meet another over-draft in the bank, and it was signed as follows: "Monmouth Printing Co., per G. G. McCosh, C. J. Wood."

The suit at bar was an action of assumpsit brought by the bank, against McCosh, Wood, Samuel S. Clark and John S. Clark, on the theory that they were partners composing the firm of the "Monmouth Printing Company," and that they, by the names and styles of "Monmouth Printing Co." and "*The Evening Gazette,*" executed said notes. The other defendants made default, but John S. Clark interposed proper pleas, denying the execution of the notes by either himself or the Monmouth Printing Company, and denying joint liability. Upon a trial in the circuit court before the judge and without a jury the findings and judgment were in favor of said John S. Clark, and the judgment there rendered was affirmed in the Appellate Court.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for the plaintiff in error.

Messrs. KIRKPATRICK & ALEXANDER, and Messrs. GRIER & STEWART, for the defendant in error John S. Clark.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The Monmouth Printing Company was a limited partnership, formed for the purpose of publishing at Monmouth two newspapers, one a weekly, called the *"Monmouth Atlas,"* and the other a daily, called the *"Evening Gazette,"* and for the further purpose of there doing a general printing business. It was engaged in the business for which it was organized, when, in the spring of 1888, fifty citizens of Galesburg submitted, in writing, a proposition or offer, the object of which was to secure the removal to and publication in Galesburg of the *Evening Gazette* as a daily newspaper, independent in politics. The partnership, at the time the offer was made, consisted of four partners,—George G. McCosh, Samuel S. Clark and Cyrus J. Wood general partners, and John S. Clark, a special partner; and the proposition or offer that was witnessed by the writing submitted was made to C. J. Wood and G. G. McCosh and J. S. and S. S. Clark. Three of the persons to whom the proposition was made and who were named in it, that is to say, McCosh, Wood and Samuel S. Clark, accepted the offer contained in the proposition, and signed the written agreement which was executed, as an answer to and acceptance of the proposition and offer submitted, and each of them signed it with his individual name. John S. Clark did not sign it.

The acceptance expressly shows, upon its face, that it is an agreement made by three, only, and to be performed and carried into execution by three, only, of the firm or proprietors doing business at Monmouth. It does not purport to be an undertaking by or on behalf of the firm. Its language is: "The undersigned, S. S. Clark, G. G. McCosh and C. J. Wood, owners and proprietors, in part, of the *Evening Gazette*, a daily newspaper published at present at Monmouth, Ill.,   *   *   * on our part hereby agree   *   *   * that we will, as soon as

practicable, abandon the printing of the *Evening Gazette* at Monmouth and remove the same to Galesburg, and locate and publish it in that city, * * * and that the *Evening Gazette* office, when so located in Galesburg, shall be prepared to issue a daily afternoon paper," etc. At the foot of the written agreement of McCosh, Wood and S. S. Clark a memorandum was written by John S. Clark, in which he stated, "I consent to the making of the above agreement by my partners, without myself assuming any of the obligations therein contained." This is a recognition of the agreement, not as an agreement of the firm, but of the three persons who were his partners in the business done at Monmouth, and his expression of his consent that they might make such agreement, and at the same time and in the same connection a disclaimer of any assumption on his part of any obligation growing out of said agreement. The material obligation contained in and imposed by the agreement is the publication and issue in the city of Galesburg of a daily afternoon paper, and it is in respect to that obligation that he disclaims any responsibility.

The fact that John S. Clark and three other persons were partners in the enterprise of publishing two newspapers at Monmouth, and of carrying on at that place a general printing business, did not preclude said three other persons from undertaking an independent enterprise and scheme for the publication of a newspaper in another city and county; and if John S. Clark did not join in such new enterprise, but, on the contrary, refused to do so, and expressly disclaimed, in advance, any liability growing out of the same, then, upon the plainest principles of justice, he should not be held liable for indebtedness incurred in the prosecution of such new enterprise, unless the circumstances are such as that, by some fault or negligence of his, money or property was parted with or services rendered on the faith of his credit.

In the case at bar, the written instruments that we have already considered were placed in the hands of the bank and

its officers at and before the time that an account was opened with the *Evening Gazette* or any money paid out on its checks. The bank had full and ample notice from said agreements and from the memorandum signed by John S. Clark, that said Clark was not one of the parties to the enterprise of printing and publishing the *Evening Gazette* at Galesburg,—that the firm of the Monmouth Printing Company was not publishing said paper, but that McCosh, Wood and Samuel S. Clark, three of the four members of that firm, were the sole and only proprietors of the *Evening Gazette* published at Galesburg. That the account was opened and kept by the bank in the name of "*The Evening Gazette,*" that the moneys were all checked out with checks signed by that name, and that three of the notes sued on were, when first executed and delivered, signed with that name and the names of McCosh and Wood, are admitted facts of the case, and seem to indicate clearly that the money here in question was not advanced on the credit of the partnership doing business by the firm name of the Monmouth Printing Company.

Some twenty-eight written propositions were submitted to the court at the trial, to be held as law in the decision of the case. The rulings of the court thereon indicate that the trial court took substantially the same view of the law of the case as that indicated herein. A number of the propositions that were tendered by plaintiff in error and marked "refused," contained correct statements of principles of the law, and were doubtless refused on the ground that they were not applicable to the circumstances of the case on trial or not based on competent testimony, and therefore not to be held as law governing the decision of the case. We are unable to see that the action of the court in the premises worked any substantial detriment to the rights of plaintiff in error.

We find no error in the record for which the judgment should be reversed, and it is therefore affirmed.

*Judgment affirmed.*