## Dominick Lanter v. Mahlon Hartman.

1. DRAINAGE—*Permanency of Systems Established by Ancestors.*— Where the owner of a tract of land establishes a system of ditches around and through it for the purpose of draining it so that it may be cultivated, and the land afterward passes into the hands of separate owners, the rights of such owners become reciprocal, and the system can not be destroyed or removed without the consent of the owners.

2. APPELLATE COURT PRACTICE—*Erroneous Propositions of Law Will Not Always Reverse.*—Propositions of law held or refused by a trial court are of the same nature as instructions to a jury; and where the Appellate Court can see that the ultimate result reached by the trial court is the only result that could be reached if the law had been properly held, it will not reverse the judgment for an improper holding of the law.

Lanter v. Hartman.

**Trespass on the Case**, for an obstruction of a watercourse. Appeal from the Circuit Court of St. Clair County; the Hon. WILLIAM HART-ZELL, Judge, presiding. Heard in this court at the August term, 1900. Affirmed. Opinion filed September 8, 1900. Rehearing denied.

TURNER & HOLDER and LOUIS KLINGEL, attorneys for appellant.

DILL & WILDERMAN, attorneys for appellee.

Where the owner of an entire tract of land, or several tracts, has, by an artificial arrangement, imposed a burden upon one portion or tract for the benefit of another portion or tract, on a subsequent sale of such parcels or tracts of those lands to different purchasers, either by direct conveyances or by a partition proceeding, the grantee of the servient estate takes it charged with the servitude thus created by the common owner, if it is open and visibly attached at the time of the purchase. Lampman v. Milks, 21 N. Y. 505: Morrison v. King, 62 Ill. 30; Ingals v. Plamondon, 75 Ill. 118; Cihak v. Klekr, 117 Ill. 643; Patneaud v. Claire, 32 Ill. App. 554.

And the length of time during which such rights and burdens may have existed prior to the conveyance have nothing to do with the right itself; whether they have existed for twenty years or for a single day, they are equally protected. Lampman v. Milks, *supra*, at p. 513.

Nor is it required by the law that such an easement shall be really necessary for the enjoyment of the estate granted; but it is sufficient if it be highly convenient and is continuous and apparent. Cihak v. Klekr, 117 Ill. 653; Goddard on Easements, p. 122.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

This case comes here by appeal from the Circuit Court of St. Clair County.

Appellant and appellee own adjoining farms; appellant's farm of eighty acres lies south of appellee's farm of eighty-five acres. The lands composing the two farms are nearly level, there being no natural sloughs or watercourses

through them, by which the surface water falling upon them, drains off. The northeast corner of appellee's farm is about one foot higher than the southwest corner of appellant's farm, so that the waters falling upon appellee's land incline to run southwesterly across appellant's land; but they can not be said to run any particular way, except as they are gathered into and made to run in artificial ditches constructed for drainage purposes.

The lands embraced in the two farms were formerly owned by one John Barth, who died seized of them in 1884. While Barth was the owner of the lands, he made and constructed a system of ditches around and through them, for the purpose of draining them, so they could be cultivated.

Except as to the "line ditch," between the farms, the following is a plat of the lands and ditches as they were located at the death of Barth:

Lanter v. Hartman.

Several years after John Barth's death, partition of the lands was had between his heirs, and the result was that each of the parties to this suit deraigns title to his farm from John Barth.

About the year 1892, the lands were surveyed by the county surveyor, when it was found that the line ditch was a few feet over on the land of appellee, one end of it being

farther over than the other end. In the survey, appellee claims appellant joined, while appellant claims he did not. After the survey, appellee straightened the ditch, putting it all on his own land, but near the line between the two farms, as appellant insisted should be done.

Some time after the line ditch was changed, appellant filled up the north ends of the three cross-ditches on his farm, and refused thereafter to open them, and appellee brought this suit to recover damages of appellant for closing and keeping closed the cross-ditches, thereby flooding appellee's land, thus injuring the land and the rental value of it.

A jury was waived and the cause was tried by the court, who found for the plaintiff below and fixed the damages at $300, for which judgment was rendered, and the case is here on defendant's appeal.

The first error assigned is as follows:

"1. The Circuit Court erred in admitting evidence on behalf of the plaintiff as follows, viz.: (a) All the evidence about the artificial ditches and furrows and flow of water therein after the commencement of this suit; (b) all the evidence as to the flow of water through artificial drains and ditches after the year 1892, when the large and main ditch through the northern portion of appellee's farm was obstructed by him or his agents."

This, we think, may fitly be termed a "blanket error," intended to save labor for the counsel and cast it upon the court; notwithstanding our inability to approve of such a mode of assigning error, we have carefully read appellant's abstract of the evidence and find very little of appellee's evidence objected to.

Appellee's witness, Seitz, who was a tenant of appellee, after testifying about the cross-ditches, was asked the following question:

"Q. If those ditches had been opened, how about it draining Mr. Hartman's land then? What effect would it have had on his land?"

The question was objected to, the objection overruled, and defendant excepted to the ruling of the court, and the witness answered:

Lanter v. Hartman.

"A. If those dams were away, the water would have went on Mr. Lanter's land where the ditch is, any time. That water would have drained out of Hartman's land if those ditches had not been plugged up. About half of Hartman's land was over with water when I was there, and it would have passed off Hartman's farm if it had not been for those ditches plugged up. I put out my crop every year and I had it half drowned out."

This testimony was, of course, partially the opinion of the witness, but even if it was erroneously admitted, we do not think it had such an effect on the court, when considering all of the evidence together, as to require a reversal of the judgment.

The assumption in the error that "the large and main ditch through the northern portion of appellee's farm was obstructed by him or his agents" is not warranted by the evidence, as we understand it.

The principal complaint made by appellant is as to the holding by the court of propositions of law submitted by appellee, and in refusing to hold propositions submitted by appellant.

As no exceptions to holding or refusing to hold any propositions of law are abstracted, we must presume that no exception was taken to any ruling of the court in regard to them.

The further errors assigned are, that the court erred in finding the issues for appellee; in entering judgment for appellee and against appellant; and that the damages are excessive.

If the court erred in finding for appellee, it must have been because the evidence failed to sustain the finding, or that the court improperly applied the law to the evidence. In the consideration of this question, the law embraced in the propositions of law held and refused will necessarily have to pass in review, although indirectly.

All of the evidence as to the natural flow of the waters falling on the lands of both appellant and appellee, is to the effect that, without artificial aid, they did not run in any direction. This fact may seem anomalous, since the southwest corner of appellant's farm is at least a foot lower than

the northeast corner of appellee's farm; but an examination of the levels, as shown on the plat made by the surveyor, explains the seeming anomaly.

The entire absence of any natural watercourse on or through the lands, confirms the correctness of the evidence and survey. Doubtless the knowledge of Barth, that the water falling on the two farms would, without artificial aid to get away, remain as it fell until absorbed by the earth or evaporated by the heat of the sun, led him to construct the system of ditches shown on the plat, for the purpose of draining the land of both appellant and appellee, which then constituted one farm. By constructing the cross-ditches, to relieve the line ditch of a portion of the waters accumulating therein, he placed a burden upon the land now constituting Lanter's farm of precisely the same nature and character that would have been placed there if the ditches had been created by the hand of nature, instead of by the hand of man; and this burden could not, after the lands north of the line ditch and the lands south of it had passed to separate owners, be removed without the consent of both owners. Lampman v. Milks, 21 N. Y. 505; Roberts v. Roberts, 55 N. Y. 275.

The slight amount of water that fell upon appellee's narrow strip of land lying south of the line ditch as originally constructed, and which did not flow directly into the cross-ditches, must inevitably, because of the situation of the land, have drained to the north, into the line ditch, after it was straightened, and in this way have reached the cross-ditches, and no greater burden was put upon appellant's land by the change in the line ditch than rested there before.

But if an appreciable quantity of water, that did not get there before, was, by the change in the line ditch, made to flow into the cross-ditches, that fact furnished no justification for appellant in closing the cross-ditches entirely. The case of Roberts v. Roberts, *supra*, is in principle very like this case would be if the change in the line ditch did increase the flow of water in the cross-ditches.

The rights of the parties in the system of drainage established by Barth are reciprocal.

Lanter v. Hartman.

If appellee had filled up the line ditch, and thus de-stroyed the connections of the cross-ditches with it, appel-lant would have had just cause for complaining of the act, and could have maintained an action against appellee for any damages he sustained in consequence of the act.    The own-ers of the two tracts of land had an easement in the land of the other, to have the ditches constructed by Barth main-tained substantially as he left them.    The propositions of law held by the court are in consonance with the views herein expressed, and while proposition No. 4, offered by appellee and held by the court, went further, and held that appellee had a legal right to have the cross-ditches kept open under the provisions of a law in force July 1, 1889, (see Hurd's R. S., 1899, Chap. 42, Secs. 187–190,) yet if the proposition was incorrect in that respect (about which it is unnecessary to express any opinion) that furnishes no good reason for reversing the judgment, as the proposition as to appellee's legal rights to have the cross-ditches kept open was correct, whether the right was based upon a statute or upon the common law.

Propositions of law held or refused by a court are of the same nature as instructions to a jury; and where this court can see that the ultimate result reached by the trial court who heard the evidence is the only result that could be reached if the law were properly held, this court will not reverse a judgment for an improper holding of the law, as the end and aim of all law is the attainment of justice.

Except as to the amount of the judgment we are unable to see how, from the evidence, the court could have found different from what it did find, even if the change in the line ditch deprived appellee from recovering as much as he would have otherwise been entitled to; and hence we are unable to see how appellant has been wronged by the court in holding or refusing to hold propositions of law or in find-ing the amount of damages it did find, as it might have found, from the evidence, larger damages.

We find no error in the record injurious to appellant, and the judgment is affirmed.