**H. O. Stone, et al., v. Caroline J. Mulvaine, executrix, etc.**
Gen. No. 11,864.

1. ESCROW—*when money placed in, released.* Where money is placed in escrow for the purpose of saving harmless persons who have guaranteed another against mechanics' liens, such money should be released where it appears that such mechanics' liens have been paid as the result of a judicial sale of the properties against which they stood.

2. MONEY PAID OUT—*when cannot be recovered.* Where a person who has guaranteed another, about to make a real estate loan, against mechanics' liens, pays to the person so guaranteed the amount of such liens decreed as a charge against the property, with the understanding that he shall bid in the property for the full amount decreed against it, including the mortgage, and shall apply the amount so given towards such bid with the understanding that in the event of a redemption such money shall be refunded, the same cannot be recovered where no redemption was made.

3. MONEY PAID OUT—*when party not entitled to return of.* Where a party has paid out money to another, to be used for a particular purpose, he is not entitled to a return thereof where the transaction was based upon a sufficient consideration.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 27, 1905.

**Statement by the Court.** This is an appeal from a judgment for costs in favor of the appellee as executrix of the last will and testament of Phineas I. Mulvaine, deceased. Phineas I. Mulvaine was sued by the appellants in the Circuit Court of Cook county in November, 1900. The declaration contained the common counts. The defendant filed a plea of the general issue thereto, and also a notice of set-off alleging that plaintiffs were indebted to the defendant in the sum of $2,000. under a certain contract in said notice described.

While the suit was pending Phineas I. Mulvaine died, and Caroline J. Mulvaine as executrix was substituted as the party defendant.

The cause was submitted to the court, without a jury, which found the issues for the defendant, denied a motion for a new trial, and gave judgment against the plaintiffs for costs. From this judgment the plaintiffs appealed to this court—in this court assigning as errors in the Circuit Court the admission of improper and the refusal of proper evidence, the refusal to hold as offered certain propositions of law, the finding of the issues and entry of judgment for the defendant, and the denial of plaintiffs' motion for a new trial.

The facts as they transpired at the trial and appear in the record are these:

The appellants are co-partners engaged in the real estate and loaning business in the city of Chicago as H. O. Stone & Co. In 1893 they received as loan brokers an application for a mortgage loan of $20,000 from one Mrs. Sobra on a house and lot on Michigan avenue. H. O. Stone & Co. submitted the loan to Dr. Phineas I. Mulvaine, who accepted it. Before the arrangement was carried out the building was damaged by fire. Repairs were necessary, and a question

arose whether mechanics' liens might not grow out of them. Dr. Mulvaine hesitated on this account to complete the loan; whereupon, to induce him to go on with it, H. O. Stone & Co. delivered to him this letter:

"May 15, 1893.

Dr. Phineas I. Mulvaine,
    4022 Grand Boul., City.

Dear Sir: In relation to the liability of mechanics' liens upon the premises 2021 Michigan avenue, in consequence of repairs now going on, we give you this letter to say that we will indemnify you against any losses arising out of such liens, if any are filed on account of the construction now going forward.      Yours truly,

H. O. Stone & Co."

At the same time, with the design to protect themselves, H. O. Stone & Co. took from Mrs. Sobra an assignment of one of the policies of insurance covering the damaged property. It was in effect stipulated during the trial that Mrs. Sobra made the assignment on condition that H. O. Stone & Co. would make with Dr. Mulvaine an agreement which would protect him against mechanics' liens, and thus induce him to carry out the loan agreed on. It also appeared in the evidence admitted at the trial that H. O. Stone & Co. at a later date informed Dr. Mulvaine that money had been obtained on this policy and placed "in escrow" in the First National Bank of Chicago "to protect" H. O. Stone & Co. "against their letter of guaranty." Evidence that this was the fact was offered by the plaintiffs, but excluded by the court, which is one of the errors insisted on in this appeal. Mrs. Sobra did not pay for the repairs nor pay the mortgage, and both became the subject of litigation. A mechanic's lien suit was brought on a bill for repairs, entitled Smith v. Sobra, General Number 124243 in the Circuit Court of Cook County. Mrs. Sobra and Dr. Mulvaine, with the claimant of another lien named Koeppe, were made parties defendant. Mr. Koeppe and Dr. Mulvaine both filed cross-bills, the one to secure his mechanic's lien and

·the other to foreclose his mortgage. The cause proceeded
ιto a decree finding that there was due from the defendant
·Sobra to the complainant Smith $295.74 for a mechanic's
lien on said premises, to the cross-complainant Koeppe
·$946.21 for another mechanic's lien, and to the cross-com-
plainant Mulvaine upon his mortgage $23,604.56. The
decree provided in the usual terms that these various sums
·should be paid within a short day, or in default, that the
premises involved should be sold by Edward C. Dicker, a
·master in chancery of the court, and that out of the pro-
·ceeds of the sale the master should first pay his own charges,
secondly, the costs of court, thirdly, the amounts found due
to Samuel Smith and William Koeppe, respectively, with
interest, fourthly, the amount found due P. I. Mulvaine,
with interest, and report any surplus to the court. The
master advertised a sale of the premises for November 8,
1895. That morning, before the hour of sale, Dr. Mul-
vaine and Mr. Lawrence Conover, who had been Dr. Mul-
vaine's solicitor in the suit which had eventuated in the
·decree, called at H. O. Stone & Co.'s office and there met
·the manager of their loaning department, Mr. Frederick W.
McKinney. According to Mr. Conover's testimony, a con-
versation there took place between Mr. Conover, represent-
ing Mulvaine, and Mr. McKinney representing H. O. Stone
·& Co., which Mr. McKinney in his testimony says may have
·taken place, but which he does not remember. Mr. Conover
told Mr. McKinney that he had come to him with reference
to Smith v. Sobra, that there was to be a sale in it, that Mr.
McKinney knew that H. O. Stone & Co. had guaranteed
·the payment of the mechanics' liens, that the decree had es-
tablished the liens and determined their amount, and that
Dr. Mulvaine thought the time had come when the matter
should be settled. Mr. Conover said that if H. O. Stone
& ·Co. would immediately pay Dr. Mulvaine $1,400.13,
(which was the amount, including fees and disbursements
and interest which was due to the mechanics' lien petition-
ers), Dr. Mulvaine would bid in the property for the full
·amount due under the decree and would give H. O. Stone

Stone v. Mulvaine.

& Co. an agreement that if the property was redeemed he would repay the money with interest, but that if Dr. Mulvaine were obliged to bid in the property without receiving such payment, he would bid it in for the amount of his own claim only, and would hold H. O. Stone for that part of the bid which would have to go to wipe out these prior liens, the amount of which would accordingly be the deficit left in the recovery of his own claim. In that case, Mr. Conover explained, H. O. Stone & Co. would be held and have to pay the $1,400.13, but they would not get it back, if the property were redeemed, as the redemption money would be only the amount of the bid with interest, etc. Mr. McKinney said that he thought that the property would be redeemed, as it was very valuable, and said that he would do what Mr. Conover had suggested; that he would have to go to the bank to get the money, and would meet Mr. Conover and Dr. Mulvaine at the Real Estate Board rooms, where the sale was to take place. Mr. Conover went to his office and dictated the following instrument:

"Chicago, Nov. 8th, 1895.

Received this day by the undersigned, Phineas I. Mulvaine, from H. O. Stone & Co., the sum of Fourteen Hundred and 13-100 Dollars ($1,400.13), the amount required to pay the mechanics' lien claims of Samuel Smith and William Koeppe, together with the costs incurred in the foreclosing thereof, in accordance with a certain decree entered October 5th, 1895, by the Circuit Court of Cook County in the case of Samuel Smith v. Marie L. Sobra et al., Gen. No. 124,243.

In consideration whereof the undersigned hereby agrees that in case the premises involved in said suit shall be redeemed from the sale of the Master in Chancery made under said decree, in accordance with the law, then the undersigned will repay to H. O. Stone & Co. said sum of money, together with interest thereon at the same rate to which he will be entitled under the certificate of sale in said suit.                    P. I. Mulvaine."

The signature of Dr. Mulvaine was added after the body of the instrument was typewritten. Mr. Conover and Dr. Mulvaine then went to the Real Estate Board rooms. There they met Mr. McKinney, who had a cheque to the order of Edward A. Dicker, master in chancery, for $1,400.13, certified by the First National Bank of Chicago. There is some discrepancy, not of importance, between the testimony as to what then happened. Mr. Conover testified that Mr. McKinney handed him the cheque, that he took it, examined it, and showed it to Dr. Mulvaine, and then handed Mr. McKinney the receipt above recited, signed by Mulvaine, and told him that Dr. Mulvaine would bid in the property for the full amount, and in case it was redeemed, repay the money. Mr. McKinney could not recollect ever having seen this receipt until it was produced and shown to him by counsel for H. O. Stone & Co., (in whose possession it appears to have been from its date), but admitted the possibility of its having been given him at the Real Estate Board rooms. He testified that he himself handed to the master the cheque with a statement or bill of the amount due on mechanics' liens certified by the master, and which he says he procured from the master; that he couldn't remember what conversation took place at that moment, but that he had a prior conversation with Dr. Mulvaine as to what the cheque was to be used for; that it was to pay mechanics' liens, and that Mr. Conover told Mr. Dicker that the cheque was for that purpose. Mr. Dicker, the master, testified that he could not say who gave him the cheque, but that it was paid to him as part of the purchase money of the sale.

After the testimony of Mr. Conover had been given, counsel for plaintiff moved to strike out all of it pertaining to any alleged agreement for bidding in the property at the sale, and refunding to plaintiffs the amount of the mechanics' liens in case of the redemption of the property from sale, and after the evidence on both sides was closed, the motion was renewed "to exclude the testimony of Mr. Conover upon question of agreement and receipt." The denial

of these motions, equivalent to the admission of the testimony, is one of the alleged errors most strongly insisted on by appellants.

The sale took place as advertised, and Mr. Conover says that the property was bid in for the full amount due for the mortgage, mechanics' liens and costs, an amount which, judging from the amount found due a month later, must have been approximately $25,600, and that this cheque of H. O. Stone & Co. for $1,400.13, and another cheque of Dr. Mulvaine for the difference between the amount due him (and for which he could receipt) about $23,800, and the balance of his bid after the $1,400.13 was deducted, were turned over to the master in fulfillment of the bid. The cheque of Dr. Mulvaine probably amounted to three or four hundred dollars. After the master returned to his office, he discovered that his clerk had made a mistake. The decree of sale provided for an advertisement of four weeks, and the advertisement had been but for three. He thereupon called up the lawyers interested by telephone, declared the sale off, and re-advertised for December 9, 1895. In the meantime he had deposited in bank to his own credit the cheque of H. O. Stone & Co. for $1,400.13, and it was duly honored. Presumably he had deposited Dr. Mulvaine's also, for subsequently he paid over to Dr. Mulvaine the amount of the two cheques which he had received—this one in question for $1,400.13, and the other which Dr. Mulvaine had given—$1,700 and something in the aggregate, he says.

November 13, 1895, H. O. Stone & Co., by Mr. McKinney, wrote Dr. Mulvaine the following letter:

"11/13, 1895.

Dr. P. I. Mulvaine, 4022 Grand Boul., City.

Dear Sir: We understand the forclosure in the Madame Sobra case has to be readvertised. We wish to have you return to us the amount which we paid to the master. We

are informed by Mr. Dicker that the amount was turned over to you.                         Yours truly,

H. O. Stone & Co.

Dictated by F. W. McKinney."

and receiving no answer thereto, on November 15th the following letter:

"11/15, 1895.

Dr. P. I. Mulvaine, 4022 Grand Boul., City.

Dear Sir: Please call and see the writer and he will explain why we wish to have the funds which you received from the Master in Chancery returned to us and paid back to cancel the liens in another way. Please call and see the writer tomorrow morning if possible, and arrange the matter.                         Yours truly,

H. O. Stone & Co.

Dictated by F. W. McKinney."

Thereafter, as Mr. McKinney testifies, he met Dr. Mulvaine at the entrance to the offices of H. O. Stone & Co., and asked him why he had not replied to the letters. Dr. Mulvaine said that it was not necessary, and that it would be only a few days before there would be another sale of the property. Mr. McKinney says: "I told Dr. Mulvaine we had been advised that the check should be drawn to the order of the master when the amount was determined, and which amount had been determined, and that I understood that it had not been so applied, and that we wished the money returned to us so that we could pay it in cancellation of the mechanics' lien claims enumerated in the bill. I stated to him that the check had been paid to the master for that purpose. That was brought out when I explained to him what I had written him in the second letter; that it was not for the need of the money; I had to make some apologies about asking him to return the money; that I did not distrust him, but wanted to give my personal attention to the application of the money. He said then he had received the money from Mr. Dicker. He said that it was not

Stone v. Mulvaine.

necessary, owing to the short length of time it would be required, and that he would protect our interests and see that it was properly applied; see that this fund was properly applied to protect our interests. That was about the ending of any conversation I had with the Doctor about the money involved."

December 8, 1895, the property was again sold, according to the second advertisement, and Dr. Mulvaine bid therefore $25,632.62, which was the full amount due on the decree, and was made up as follows:

| | | |
|---|---:|---:|
| Costs due to Smith ........................$ | 71 | 50 |
| Master's Fees and Disbursements............ | 215 | 70 |
| Amount of lien due Smith, with interest...... | 298 | 37 |
| Costs due to Koeppe....................... | 81 | 00 |
| Amount of lien due Koeppe, with interest..... | 954 | 62 |
| Costs due Mulvaine....................... | 197 | 00 |
| Amount due Mulvaine under decree, with interest ............................... | 23,814 | 33 |
| Total ............................$ | 25,632 | 62 |

From this sale the property was never redeemed.

The plaintiffs offered to prove that after the property had been bought in at the last sale by Dr. Mulvaine, they made demand on the First National Bank for the money which had been deposited under agreement with Madam Sobra to protect them on the liability for the mechanics' liens, and that on Madam Sobra's objecting to the money's being paid over, the Bank filed a bill of interpleader in the Superior Court of Cook County; that upon hearing a decree was entered in said cause, awarding the fund to Mrs. Sobra, and that that decree was affirmed by this Court.

The offer was rejected, and this ruling is one of the alleged errors urged here.

KREMER & GREENFIELD, for appellants.

JOHN SCHWENDER, for appellee; LAWRENCE P. CONOVER, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The facts in this cause, as shown in the record, irresistibly suggest to us that the plaintiffs parted with their money without sufficiently considering possible contingencies and results in the affair in which they were involved, and that the defendant's testate used the money as it was expected and intended that he should, and without the liability to account for it, save under circumstances which were expected to happen, but which never came about. When H. O. Stone & Co. gave, as the weight of the evidence shows they did, the cheque for $1,400.13, made to the order of the master in chancery, to Mr. Conover for Dr. Mulvaine, and received in exchange the receipt which is in evidence, they believed undoubtedly that the property would be redeemed and that they would have a double security for the money they were advancing: first, the amount which Mrs. Sobra or her creditors or assignees would pay for such redemption; and secondly, the amount of the Sobra insurance policy deposited in the First National Bank.

They knew, of course, that it would be necessary for Dr. Mulvaine, under this arrangement, to bid in the property for the aggregate amount of the liens against it; for if he did not, he could not, in case of redemption, make himself whole, and at the same time repay to H. O. Stone & Co. the amount then advanced by them. But they overlooked, or did not recognize, the truth of the correlated proposition, that if the property were bid in for the aggregated amount of the liens, the mechanics' liens would be, in the eye of the law, paid by Mrs. Sobra's property, and the money held "in escrow" by the First National Bank would have to be released to her.

It appears, indeed, by the plaintiffs' own statements (although the evidence concerning the litigation between the appellants and Mrs. Sobra as offered below in the case at bar was rejected, and we think rightly so), that it was not until a judgment of a chancellor in the Superior Court to that effect was affirmed by this court, that the appellants here yielded assent to this legal conclusion.

Stone v. Mulvaine.

Their claim on the fund springing from the Sobra insurance policy being gone, however, and there being no redemption money from which they can recoup themselves, as the property was not redeemed, they are in the position of having, in reaching for the doubtful, dropped the certain unless they can recover in this action from Dr. Mulvaine's estate the money which they paid over to him. In any case, the practical and unfortunate result would seem to be that Mrs. Sobra, who should have paid these liens, is not obliged to do so, and that the loss must fall on one of two parties, who should, in justice, have been equally protected against it.

Certainly Dr. Mulvaine did not anticipate that his security would be burdened, if he were obliged to take it in satisfaction of his debt, with the amount of these liens. It was precisely that which he endeavored to guard against by insisting on the original letter of guaranty from the appellants. Nor can it be supposed that H. O. Stone & Co. anticipated an ultimate loss to them in negotiating this loan, or gave the guaranty in question without feeling assured that Mrs. Sobra would pay for the repairs in question from her own resources.

The Circuit Court has decided, however, that as between the appellants and the appellee, the loss must fall on the appellants, and that with the appellants' unfortunate experience with Mrs. Sobra, appellee has nothing to do. It is our opinion that in this the Circuit Court is right.

We think that although the cheque of H. O. Stone & Co. of November 8, 1895, for $1,400.13, was made to the order of the master, the evidence fairly establishes that it was so made only for convenience, and because the hands of the master were its ultimate destination, and that it was given to Dr. Mulvaine for his benefit and use, as expressed in the receipt or agreement handed contemporaneously to H. O. Stone & Co. And whether that receipt is to be construed as such a contract or agreement that no parol evidence should be admitted to supplement it or explain it, or merely as a memorandum of part of a contract, the whole of which may

be proved by parol evidence, (Bradshaw v. Combs, 102 Ill.,
428), the result would be the same. If the paper must be
read entirely by its own light, the agreement is only to re-
pay this money "in case the premises involved in said suit
shall be redeemed from the sale of the Master in Chancery
made under said decree in accordance with the law." That
contingency has never happened, and under this instrument,
therefore, if it be the only proper evidence of the agree-
ment entered into, the appellants have no claim to recover.
If, however, as we think, under such authorities as: Green-
leaf on Evidence, Vol. 1, Sec. 282-284a; Ball v. Benjamin,
73 Ill., 39; Donlin v. Deagling, 80 Ill., 608; Ruff v. Jar-
rett, 94 Ill., 475; Razor v. Razor, 142 Ill., 376; Bradshaw
v. Combs, 102 Ill., 428, is the sounder view, parol evidence
not inconsistent with this written memorandum is admis-
sible to explain and illuminate it, it remains equally as
plain that the appellants should not recover this money from
appellee. For Mr. Conover's testimony shows very clearly
the conditions surrounding the payment of the money and
the making of the receipt, and places beyond question the
understanding of the parties, which seems to us plain
enough from the instrument itself, that Dr. Mulvaine would
bid in the property for the aggregate amount of the liens,
pay over the cheque to the master as a part of his bid, and
return the amount, if he received it in a redemption pay-
ment. Such an understanding or agreement is not only not
inconsistent with the instrument, but it is the only one
which would be consistent with it. For an agreement on
Dr. Mulvaine's part to pay back this money on redemption
from any less bid than the full amount due, would be tanta-
mount to a waiver on his part of a guaranty he already had
from appellants against loss on account of the mechanics'
liens,—a very improbable thing for him to make.

Nor is it consistent with this instrument or receipt, that
the mechanics' liens were to be paid by the cheque before
the sale took place, as was suggested by appellants' counsel
in oral argument. For in that case the aggregate amount
remaining due, and for which the property would be sold,

and which alone Dr. Mulvaine could have been expected to bid, would only represent his own claim, and why should he on redemption for that amount pay again to Stone & Co. what he had already paid out to reduce the decree?

It is urged, however, by the appellants, that whatever might be the rights of the parties if they rested alone on what took place on November 8, 1895, or before, subsequent communications between the appellants and Dr. Mulvaine made a contract which renders appellee liable. We do not agree with this contention. It was very natural for H. O. Stone & Co., when they found that the sale had not come off, as advertised, and was to be for a considerable time delayed, to suggest that the money should, in the meantime be returned for their use. They had given it to Dr. Mulvaine only for a particular purpose, namely, to pay a portion of the bid he was to make at a sale of the Sobra property. Until that sale was made the use of the money should be theirs and not Mulvaine's. This, by itself, would explain the letters of November 13th and 15th. It is true, the last one speaks of "cancelling the liens another way," but if there were any such intention, it was evidently abandoned, since Dr. Mulvaine, after a conversation, was allowed to retain the money. That Dr. Mulvaine said that he would protect appellants' interests and see that the money was properly applied, cannot, we think, under the circumstances, be construed to mean anything more than that he would do at the second sale what he had done at the first,—apply the money on the bid which he would make for the full amount due. We do not think that the question of the release of Mrs. Sobra's money "in escrow" was then in the mind of either party. If it were, it may have been obscured by the feeling that the property was sure to be redeemed.

At all events, it seems to us clear that if at that time it had been decided that the only safe way for the appellants to act was for them to pay the mechanics' liens and reduce the decree, and Dr. Mulvaine had agreed to that, (and this is in effect the contention of appellants, as we understand it), then the appellants would not have acquiesced in his

retention of the money, nor have waited until December 9 for the payment of the liens, but have taken immediate steps thus to have the decree partially satisfied by the payment of the money in Mulvaine's hands.   There was no reason for waiting, if this was to be the course pursued, and there may well have been reasons connected with the advertisement and sale for not postponing the payment.

We do not think there was error in the admission or exclusion of evidence below, nor in the finding or judgment of the court, which seem to us consistent with the law and the evidence.   It is not necessary, therefore, to discuss the twenty-two propositions of law appearing in the record, some as held, some as refused and some as modified.   Even if the court below were not strictly correct in them, it would not affect the result here.   Lanter v. Hartman, 95 Ill. App., 80; Moffitt-West Drug Co. v. Aldrich, 87 Ill. App., 184; Niagara Fire Ins. Co. v. Bishop, 154 Ill., 9; Stowell v. Moore, 89 Ill., 563.

But we do not find the rulings on the propositions subject to criticism.

The judgment of the Circuit Court is affirmed.

*Affirmed.*