# Commercial State Bank of Forreston, Appellee, v. Eilert Folkerts, Appellant.

## Gen. No. 6,170.

1. BILLS AND NOTES, § 411*—*when burden on defendant to show fraud.* Where duress or fraud are set up as a defense to an action on a promissory note the burden is on the defendant to prove such averments by a preponderance of the evidence.

2. BILLS AND NOTES, § 441*—*when evidence insufficient to show fraud in procuring execution of.* In an action on a promissory note, the preponderance of the evidence *held* to negative fraud and duress in procuring the signing thereof.

3. BILLS AND NOTES, § 50*—*when supported by consideration.* Where a promissory note, given in discharge of an obligation of another than the defendant, was signed by the defendant on a day subsequent to that on which it was signed by such other party, but it was not intended by the payee to be, and was not in fact, accepted until it was signed by the defendant, *held* that no new consideration moving to the defendant was necessary to make him liable thereon, inasmuch as the signing by both parties and the acceptance were a part of the same transaction.

4. BILLS AND NOTES, § 50*—*when consideration sufficient to bind signer.* The discharge of an existing indebtedness of another is a sufficient consideration to bind one signing a note, given in discharge thereof, whether he signs as joint principal, maker or surety.

5. TRIAL, § 292*—*when propositions of law assuming facts properly refused.* It is not error to refuse to hold propositions of law assuming facts which do not agree with actual facts as shown by the evidence.

6. APPEAL AND ERROR, § 1567*—*when incorrect rulings on propositions of law harmless error.* Conclusions of law based on an assumed state of facts are abstract propositions, and incorrect rulings in abstract propositions of law are harmless error where the judgment is in accordance with the law and evidence governing the case.

7. APPEAL AND ERROR, § 1567*—*when refusal to hold correct propositions of law harmless error.* Refusal to hold propositions of law on matters not in issue, even though they are correct, is not reversible error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CC 25

Commercial State Bank of Forreston v. Folkerts, 200 Ill. App. 385.

Appeal from the Circuit Court of Ogle county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 14, 1916.

WILLIAM J. EMERSON and JAMES M. HUFF, for appellant.

J. C. SEYSTER, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from a judgment rendered against appellant, by the Circuit Court of Ogle county, for the sum of $1,477.59 upon a promissory note after a trial by the court without a jury. A judgment upon this note had been originally entered by confession under power of attorney attached to the note, but upon petition by the appellant the judgment was opened and he was allowed to plead and make his defense to a recovery upon the note. The defenses upon which appellant relied, and concerning which evidence was offered, were want of consideration, duress, and fraud and misrepresentation.

The proof shows that appellant's son, Frank Folkerts, had been engaged in the business of buying and selling live stock, and became indebted to appellee, the Commercial State Bank of Forreston, on a note for $1,000; also for an overdraft amounting to the sum of $297.42, and that the note in question was taken by appellee in liquidation and settlement of the $1,000 note and the overdraft. The evidence is very conflicting, especially as to what occurred between the parties at the time the note was taken by appellee.

The appellant claims that George Snyder, appellee's cashier, came to him at his home in Forreston and told him that his son Frank had overdrawn his account and that he wanted appellant to make it right at the bank, but that appellant refused to do so; that the next day

the cashier came again to see him about the matter of the overdraft and again insisted that appellant would have to do something about it, but that he again refused; whereupon the cashier told him that he would go to Oregon and have his son Frank arrested for making the overdraft; that the matter of the arrest of his son worried appellant during the night following and induced him to go to the bank the next morning and sign the note; that he signed the note without reading it, upon the representation of the cashier that it was merely for the $297.42 overdraft, but discovered as the cashier picked up the note that it was for a larger amount and then wanted to know why it was and also at once demanded the note back, but that the demand was refused.

On the other hand, the cashier testifies that he never made any threats to have appellant's son arrested, and never asked appellant to make good his son's overdraft; that the only conversation prior to the execution of the note by appellant, which he had with appellant, occurred one day at the bank several weeks prior to the signing of the note; that at that time he called appellant into the bank and asked him when Frank was coming back, and then appellant wanted to know why he asked about Frank, and he then told appellant that there was an overdraft there and he would like to have it cleaned up; that this was all there was said to appellant about the overdraft at that time and prior to the signing of the note, and that it was on the occasion mentioned that he gave appellant a slip of paper showing the amount of the overdraft.

Several weeks after this conversation appellant's son Frank came into the bank and the matter of the overdraft was discussed with him, and he was then told that he would have to give the bank a new note, with sureties, to cover not only the amount of the overdraft but also the amount due on the $1,000 note, the surety to be given to be satisfactory to the bank; that

the note in question was thereupon prepared and then signed by Frank Folkerts and that he promised to send some one, who would be satisfactory to the bank, to sign as surety, and mentioned the name of Henry Drake, and was told that Drake would be satisfactory; that Drake, however, did not come in to sign and that the next day he, the cashier, went to see Frank about the surety at his father's house and saw Frank there; that he was hauling gravel at the time; that he inquired of him about the surety and Frank told him he would let him know after supper about the matter; that afterwards the witness went into the country and after he came back, that evening, Frank Folkerts met him at the bank corner and informed him that the appellant, his father, would sign the note the next morning, and that the next morning the appellant did come into the bank and stated that he wanted to sign the note with Frank; that the note was handed to appellant and he asked how much it was and was told by the witness that it was for $1,322.42; that upon learning the amount he asked what Frank did with all that money; whereupon the witness informed him that he did not know, but that Frank had bought an automobile, but that he didn't know what he had done with the rest of it; that appellant then signed the note and walked out.

The cashier also testified that appellant, before signing the note, put on his glasses and looked it over; that he did not make any objection to it after he had signed it nor demand it back at that time. But that some days after the date of signing, appellant came into the bank and said he wanted his name taken off the note, and when asked why, he replied that Frank had been drinking and was acting like a crazy man and that he would not be security for him, and that thereupon the cashier told him that his name would come off of the note when he paid the note, and not before.

The cashier also testified that the appellant never

claimed in any conversation with him that the note was for a larger amount than he thought it was when he signed it; that the first he knew of any such claim on the part of appellant was in January, just before the judgment was entered on the note.

The testimony of the cashier as to what took place at the time of the signing of the note is corroborated by Martin H. Eakle, the vice president of the bank; and Dr. Overfield, the president of the bank, testified that appellant came to see him a few days after he had signed the note and asked him to see that his name was taken off of the note, and when he inquired why, the appellant said: "Because Frank had been drinking too much, and he didn't care to have his name on the note with Frank any longer"; that appellant gave no other reason for wanting his name off and didn't claim, at that time, that the note was for a larger amount than he thought it was when he signed it.

It was incumbent on appellant to establish his defense by a preponderance of the evidence, but the record discloses a preponderance of the evidence against appellant's contention that the note was signed by him under the influence of threats to arrest his son Frank, and his signature was obtained by fraud or false representations. It is insisted by appellant that he received no consideration for signing the note. It is not necessary that appellant should have received a separate and distinct consideration for the obligation which he assumed by signing, merely because his signature was attached to the note on a different day from the date of signing by his son Frank, if the signing was originally intended and merely delayed. (*Ives v. McHard*, 2 Ill. App. 176, affirmed in 103 Ill. 97.)

If the signing of the note had been a separate transaction; if the note, before appellant's signature was attached, had already been accepted by appellee, and after such acceptance appellant had been called upon

to sign, and signed, then such signing would be a separate act distinct from the original transaction; and in that case it would have created a separate and distinct obligation and contract and would also have required a separate consideration to support it; but the evidence clearly tends to show that appellant's signing, though separated in point of time from the signing by his son, was intended to be and was a part of the same transaction by which the note in controversy was made, taken and accepted as a payment and discharge of a pre-existing indebtedness of appellant's son, and that the transaction was not completed until appellant had signed the note, and that the note was not acceptable to appellee, nor accepted, until the signature of appellant had been attached to it.

Under these circumstances it was not necessary that there should have been a separate consideration to support appellant's obligation. The consideration received by appellant's son, as maker of the note, is sufficient to legally bind appellant to the obligation assumed by him in signing it. (*Harty v. Smith*, 74 Ill. App. 194; *McMicken v. Safford*, 197 Ill. 540; *Wylie v. Dickenson*, 50 Ill. App. 622.)

The fact is not controverted that the note in question was accepted by appellee, in satisfaction and payment of pre-existing claims which appellee held against appellant's son, Frank Folkerts, and this was a sufficient legal consideration. (Chapter 98, art. II, sec. 25, Hurd's Revised Statutes, J. & A. ¶ 7664.) And if legally a sufficient consideration for appellant's son, as maker, under the authorities referred to, it was also legally a sufficient consideration for the obligation assumed by appellant in signing it whether his obligation be that of joint principal, maker or surety.

Complaint is also made by appellant because the court refused to hold certain propositions of law, especially propositions numbers 7 and 11. Proposition 11 is based on an assumed state of facts, and undoubt-

edly the court found that those assumed facts did not agree with the actual facts, as shown by the evidence. It was not error to refuse to hold this proposition. (*Chicago & W. M. Ry. Co. v. Hull,* 76 Ill. App. 409.) It may also be said in this connection that a conclusion of law based upon an assumed state of facts is a mere abstract proposition, and rulings on abstract propositions, even if incorrect, are harmless error. Incorrect rulings on abstract propositions of law are harmless error where the judgment is in accordance with the law and evidence governing the case. (*Niagara Fire Ins. Co. v. Bishop,* 154 Ill. 9; *First Nat. Bank of Galesburg v. Clark,* 143 Ill. 83; *Lanter v. Hartman,* 95 Ill. App. 80; *Famous Mfg. Co. v. Wilcox,* 80 Ill. App. 54, affirmed in 180 Ill. 246; *Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co.,* 146 Ill. App. 350; *Stone v. Mulvaine,* 119 Ill. App. 443; *Moffitt-West Drug Co. v. Aldrich,* 87 Ill. App. 184.)

Proposition No. 7 embodied the question as to whether appellant was or was not a principal maker of the note in controversy. This question was not an issue in the case, and a finding on it was not necessary nor material in passing on the merits of the case. Assuming, therefore, that the trial court should have held this proposition as a matter of law, no error was committed in its refusal for which the judgment should be reversed, because the decision of the case depended entirely on whether or not appellant had proven his defenses. What the Supreme Court said in the case of *Stowell v. Moore,* is particularly applicable to this situation: "It is also claimed the court erred in refusing to hold as law certain propositions submitted by appellant. It will not be necessary to inquire whether the different propositions submitted by appellant contained correct principles of law, as the decision of that question would not necessarily change the judgment rendered in the case. The decision of the case depended entirely upon the view the court might take of

the evidence. If the evidence of the defendant was re-
lied upon, then no recovery could be had. If, on the
other hand, the evidence of the plaintiff, which was in
direct conflict with that of the defendant, was received
as the more credible, then the judgment would neces-
sarily be in his favor. Under such circumstances it
was immaterial what view the court might take of the
abstract propositions of law submitted by appellant.
As appellant was, therefore, in no manner injured by
the decision of the court refusing the propositions
submitted, we cannot on that ground reverse the judg-
ment. (*Stowell v. Moore*, 89 Ill. 563.)

We are clearly of opinion that the judgment ren-
dered in this case accords with the law applicable
thereto, and is sustained by a preponderance of the
evidence. The record does not show any reversible
error, and the judgment should therefore be affirmed.

*Affirmed.*