Reversed and remanded.

Justice McALLISTER did not sit in this case.

---

## MICHAEL SHENK

### v.

### ERSKINE M. PHELPS ET AL.

1. STATEMENT.— Appellant purchased a bill of goods upon credit of appellees, and was subsequently compelled to make a written statement of his financial standing in order to obtain further credit. Failing to make payment, he was arrested upon a warrant for obtaining goods under false pretenses, and while a prisoner under such warrant was induced to procure his father to sign a note for the amount of the debt.

2. USE OF CRIMINAL PROCESS TO COLLECT A DEBT.—Where the use of criminal process is employed mainly for the purpose of securing the payment of a private indebtedness, such use is contrary to public policy and illegal, and a note given under such circumstances is void.

3. ILLEGALITY CANNOT BE WAIVED.—Where a contract is void on the ground of public policy, or against a statute, any attempt to enforce it will

fail, whenever the illegality appears, and in such cases there can be no waiver. No consent of the defendant can neutralize its effect.

4. COMPOUNDING CRIME—COMPENSATION FOR PRIVATE INJURY.—The proviso in the statute against compounding a felony, which allows a person to receive compensation for his private injury, has no application in this case. The statute simply intended to provide that the mere act of receiving compensation for a loss sustained through a criminal offense shall not make one guilty of compounding the crime.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed August 5, 1880.

Mr. J. K. WILSON and Mr. CHARLES H. WOOD, for appellant; that the note was procured by the illegal use of the criminal process of the State, and is therefore void, cited Fay v. Oatley, 6 Wis. 42; Bowen v. Buck, 28 Vt. 309; Shaw v. Spooner, 9 N. H. 197; Seiber v. Price, 26 Mich. 519; Slomer v. The People, 25 Ill. 70; Schommer v. Farwell, 56 Ill. 542; Henderson v. Palmer, 71 Ill. 579; Dixon v. Olmstead, 9 Vt. 310.

Where the contract is void on the ground of public policy, its confirmation is affected with the original taint: Negley v. Lindsey, 67 Pa. St. 217; Duncan v. McCullough, 4 Serg. & R. 482; Coppel v. Hall, 7 Wall. 558.

Mr. ERIC WINTERS, for appellees; that the note is not void, cited Rev. Stat. Chap. 38, § 43; Ford v. Cratty, 52 Ill. 313; Taylor v. Cottrell, 16 Ill. 93; Schommer v. Farwell, 56 Ill. 542.

The assignment of accounts by appellant to his father constitutes a good consideration for the note: Parsons on Contracts, 445; Whitter v. Skinner, 23 Vt. 532; Edson v. Fuller, 2 Foster, 185.

WILSON, J.   The testimony as disclosed by the record tended to establish the following state of facts :   William Shenk, son of appellant, was engaged in the boot and shoe trade, at Pontiac, Illinois.   Early in January, 1876, he bought a bill of goods of appellees' traveling salesman, and about thirty days subsequently called at their store in Chicago and wanted to buy another bill.   Mr. Dodge, one of appellees, required as a

condition of giving him further credit, that he should make out a written statement of his affairs, which he accordingly did, showing how many goods he had on hand, how much money, also the amount of his indebtedness; and thereupon on his promising to remit $200 within two weeks, appellees sold him a further bill of goods, making his indebtedness to them about $700.

Not long after the purchase of the last bill, and being also indebted to various other firms, Shenk sent a portion of his stock to Chicago and had the same sold at auction. The residue he disposed of to one McMullen, taking his notes therefor, payable in one and two years, and soon after removed to Chicago.

Becoming satisfied of the falsity of Shenk's statements, appellees, acting, as we infer from the evidence, in concert with other creditors, placed the matter in the hands of Turtle's Detective Agency. A warrant for the arrest of Shenk on the charge of obtaining goods on false pretenses was procured from a justice of the peace, which Mr. Bull, one of Turtle's men, was deputized to execute, and Shenk was arrested. It would swell this opinion into undue proportions to recapitulate the testimony in relation to the various occurrences that followed the arrest, and which finally culminated in obtaining the execution of a note for §1,500 by Shenk's father, payable to appellees, as a condition to the son's release from the arrest.

While there is some conflict in the testimony in relation to minor things, one must be very blind not to see in reading the entire evidence that the object sought to be accomplished by the use of the criminal process was not the punishment of Shenk for an offense against the public, but to coerce him by threatened imprisonment into the payment, or furnishing security for his private debt.

Upon being arrested, he was not taken before the justice of the peace who issued the warrant, but to Turtle's office, and was there locked up until Mr. Dodge could be sent for. Upon the latter's arrival negotiations were opened for the furnishing of security by Shenk for the payment of appellees' debt, and he was threatened with imprisonment as the consequence of

his failing to do so. He was much alarmed and shed tears, and finally thought it possible his father might give a note. His request to see an attorney was refused, and he was taken a close prisoner into the country to see his father, guarded by Bull and another of Turtle's men—was kept locked up during the night at Wilmington, and on the following morning taken out to his father's.

On arriving there they found the latter in bed, very ill, suffering great pain from a large carbuncle on his spine just below the neck, and more or less under the influence of morphine which the attending physician had been administering to him for several days. It does not require the testimony of an expert to prove that if not entirely incapacitated, he was in an unfit condition for the transaction of business of that nature, and it should seem that ordinary considerations of humanity would have been sufficient to induce the detectives to respect his request not to be disturbed. Bull had brought with him a note for $1500 drawn up, ready for appellant's signature, and which he was finally induced to sign.

It is not very material whether this was brought about by Bull's threats of imprisonment of the son, or by the importunities of the latter. It is enough that appellant saw his son in the custody of officers of the law charged with a criminal offense which would send him to prison, and from which appellant was made to believe there was no way of escape except by his executing the note. He signed it, and the parties left. The warrant having accomplished its mission, was never returned, Shenk was suffered to go at large, and no more was heard of the criminal prosecution. In addition to these general features of the case, other significant circumstances were disclosed in the proof, all tending to fortify the view that the criminal prosecution was resorted to solely for the purpose of aiding appellees in the collection of their and the other creditors' demands against Wm. P. Shenk, and not to vindicate an infraction of the criminal laws.

If we are correct in our conclusion that the object sought by the commencement of the criminal prosecution was as already stated, the question arises, does a note or other undertaking to pay, thus obtained, constitute a valid obligation?

We understand the law to be well settled, that the use of the criminal process of the state as a means of collecting private indebtedness is illegal and contrary to public policy; and that contracts entered into or securities obtained under the pressure of such a proceeding cannot be enforced. In 1 Chit. Crim. Law, p. 4, it is said: "Any contract or security, made in consideration of dropping a criminal prosecution, suppressing evidence, soliciting a pardon, or compounding any public offense, is invalid." See, also, 5 East, 298; 11 East, 46; and in Henderson v. Palmer, 71 Ill. 579, the court say: "The rule is fully recognized that where a contract grows immediately out of, or is connected with an illegal or immoral act, a court of justice will not lend its aid in its enforcement."

In Bowen v. Buck, 28 Vt. 309, certain creditors living in Massachusetts had charged a debtor, then residing in Vermont, with obtaining goods under false pretenses, and caused him to be arrested by an order of the Governor of Vermont, under a requisition from the Governor of Massachusetts, and held until he paid and secured a portion of the claim. It was held that as the process under which he was arrested was used in a manner to compel the defendant to settle, and give the note in suit, the note was void. The court says: "It must be distinctly understood that it is wholly illegal to use the criminal process of the State to extort money, or even to compel the payment of debts. It was not provided for any such purpose. If a creditor is desirous of collecting a demand, lawfully due him, the laws have provided remedies deemed by the legislature suitable and competent for that purpose."

Again, in Fay v. Oatley, 6 Wis. 42, a creditor in the State of New York procured an indictment against his debtor residing in Wisconsin on the charge of obtaining the goods for which the debt was incurred, on false pretenses, and procured a requisition on the Governor of Wisconsin, who issued his warrant, on which the debtor was arrested, with the view of inducing him to furnish the security, and he was held until his friends furnished the required security, when he was released. The Supreme Court held that the securities so obtained were void, being obtained through an abuse of legal process and

against public policy. The court after setting forth the circumstances of the event and detention, the giving of the security and the sudden abandonment of the prosecution, proceeds: " This is such gross abuse of criminal process as to preclude its sanction by any court of law or equity. Public policy will not permit the process of the State to be perverted and abused, and all contracts growing out of such perversion and abuse, are for that reason utterly void."

In the light of the principles thus enunciated and in respect to which we are not aware that there is any conflict in the authorities, several of the instructions given at the request of the plaintiff were improper, two or three of which we will notice. The 3d is in substance, that if the jury believe from the evidence that Dodge had reasonable grounds to suspect that William Shenk was guilty of the crime charged in the complaint, and that he was in fact guilty of the crime charged in the complaint, then Dodge was justified in suing out the warrant and causing the arrest of Shenk.

Aside from the technical objection that the complaint in fact fails to charge any offense by reason of an omission to allege that Shenk did anything, the allegation being merely " that Shenk did, on the 26th day of February, 1876, by false pretenses, with intent to cheat Phelps, Dodge & Palmer of certain boots and shoes of the value of $275." Aside from this objection is the more substantial one that it excludes from the jury all consideration of the vital question in the case as to the purpose and object for which Dodge sued out the warrant, and as to the use that was intended to be made of it. If the object was merely to punish the accused for a criminal offense, and it was used for that purpose, the arrest was lawful; but if the object was to coerce the accused under the cloak of a criminal prosecution into the giving security for his private debt, and it was used for that purpose, the arrest was not lawful—and this was a question of fact which should have been submitted to the jury by proper qualifying words in the instruction. The inference which it would seem was sought to be drawn from the instruction as given was, that if Wm. P. Shenk was guilty, Dodge was justified, not only in causing his arrest, but

also in using it as an instrument to induce appellant to execute the note. If it had not that significance, it had no relevancy to the issue, and for that reason was improper.

The plaintiffs' 5th, 8th and 11th instructions were also improper for the same reason. The 11th was as follows :

. "If the jury find from the evidence that the defendant executed the note in question, knowing at the time of the execution of the same that he was executing a note, and for the amount, and payable as shown by the same, that he voluntarily assumed the debt or debts of his son, and understood the effect of what he was doing, and if the jury find from the evidence, that the consideration for said note, as between the plaintiffs and defendant, was the assignment to said defendant of the accounts against his son, and they were so assigned, and that at the time of the giving of said note, the defendant had notes due the said son in his possession or control, then the assigning of said accounts was a good and valid consideration, and the jury should find for the defendants."

All that is said in this instruction may have been true and still the plaintiffs would not be entitled to recover if the jury further believed from the evidence that the defendant was induced to execute the note by an illegal use of the criminal process. The 5th and 8th instructions are open to the same criticism.

We are also of the opinion that the qualification added by the court to several of the defendant's instructions was improper. The 4th instruction was as follows: "If the jury believe from the evidence that the criminal prosecution was commenced by the plaintiffs against William Shenk for the purpose of enabling them to collect their debt, and that they made use of it to get the note in evidence from the defendant, that is a fraud upon the law, and in such case the plaintiff cannot recover." And the 3d instruction is in substance that if the plaintiffs swore out the warrant, and arrested Shenk, and without returning the writ to the justice, took the prisoner to a foreign county, and that this was done for the purpose of procuring the execution of the note in question, and that thereby the plaintiffs succeeded in obtaining the execution of the note, and

thereupon let Shenk go without attempting to bring him before the justice, then such use of the process was illegal and a fraud upon the law, and the note so procured cannot be enforced by the plaintiffs.

The court refused to give these instructions as asked, but gave them after adding the following qualification: "Unless as a part of the transactions between the parties, the accounts against the son were assigned to the defendant as the consideration of the note in suit, in which case, as the defendant has not returned the accounts, he cannot avoid the note." The court seems to have invoked the principle of an equitable estoppel in order to give effect to a contract tainted with illegality. It was, in effect, saying the plaintiff has procured the execution of a contract by illegal means, and through an abuse of the criminal process of the State; but because the defendant has not returned so much of the consideration as he actually received, the plaintiff shall have a verdict. The cases are numerous to the effect that where a contract is void on the ground of public policy or against a statute, any attempt to enforce it will fail whenever the illegality appears—and the circumstance that one party has failed to perform his part of the agreement cannot operate as a waiver of such illegality.

The general principle is stated in Coppel v. Hall, 7 Wall, 538. Mr. Justice —— ——, in delivering the opinion of the court, uses the following language: "The instruction given that if the contract was illegal, the illegality had been waived, was founded on a misconception of the law. In such cases there can be no waiver. The defense is allowed not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim *ex dolo malo non oritur actio* is limited by no such qualification. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination

reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation." See also Collins v. Blantern, 1 Smith's Leading Cases, 630 and notes.

But it is insisted by appellees that under the saving clause of the Revised Statutes against compounding a criminal offense, it was lawful for them to receive compensation for the private injury sustained through the false representations of William P. Shenk. That statute provides as follows: " Whoever takes moneys or other reward or promise thereof to compound any criminal offense, shall be fined in double the sum or value of the thing agreed to be taken; but no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury occasioned by the commission of any such criminal offense." It is not perceived that the provisions of that statute militates against the view we have taken of the present case. The statute simply intended to provide that the mere act of receiving compensation for a loss sustained through a criminal offense, shall not make one guilty of compounding the crime. As, if a man steals my horse I may receive back my property, or if he steals my money I may take his note or other security for its repayment, without subjecting myself to the charge of compounding the crime. And the fact that I do this while the offender is under arrest, does not of itself render the transaction illegal.

Nor do we think the court in Taylor v. Cottrell, 16 Ill. 314, and Ford v. Cratty, 52 Ill. 314, cited by appellee's counsel, intended to declare a different principle. In the former case the court says: " The motive and intention of the prosecutor or other person who may use, or seek to use the process of the law, or the imprisonment as a means, motive or consideration to influence, in connection with the fact or degree of influence thereby exercised upon the party, are to be taken and considered together, and from the whole thus presented, we determine the duress as a question of fact." And the court concludes by saying: " The evidence failing to satisfy us of the false, malicious or *illegal imprisonment*, or that the consideration of this note was a discharge from it, and not a just satisfaction of Tay-

lor's equitable claim, we are of opinion that the judgment should be reversed." A clear implication that had the arrest been illegal, the judgment would have been the other way.

In Schommer v. Farwell, 56 Ill. 542, which was a case very similar to this in many of its features, Mr. Justice Lawrence says: "It is quite true as urged by counsel for appellees that a person prosecuting upon a charge of crime may receive private satisfaction for his private injury, and the fact that he receives this while the prisoner is in confinement, and forbears further prosecution, does not, of itself, render the transaction illegal. But, as was said by Parsons, C. J., in Watkins v. Baird, 6 Mass. 506, even if the imprisonment is lawful, yet if the prosecutor detain the prisoner in prison unlawfully by covin with the jailor, this is a duress which will avoid the deed.

"There can be no doubt of the correctness of this principle, and it applies to the case at bar.  *  *  *  It is evident that the sole purpose of Keefe in this prosecution was by the agencies of the criminal law to secure what he believed to be a debt due to his employers. The police officers seem to have paid no attention to the command of the magistrate's warrant, or to the rights of the prisoner, but to have used their official power merely in obedience to the wishes of Keefe, and to enable him to accomplish his private purpose."

For the error of the court in giving the plaintiffs' instruction hereinabove referred to, and qualifying the defendant's instructions, the judgment of the court below is reversed and and the cause remanded.

Reversed and remanded.