THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE
COMMERCIAL LIFE INSURANCE COMPANY, Appellant.

*Opinion filed October 28, 1910—Rehearing denied Dec. 8, 1910.*

1. INSURANCE—*what constitutes a violation of section 1 of act
of 1891, to prevent unjust discrimination in rates.* The provision
of section 1 of the act of 1891, (Laws of 1891, p. 148,) that no
life insurance company shall "promise to give any advantage or
valuable consideration whatever, not expressed or specified in the
policy," as an inducement to take out insurance, is violated where
the person so taking insurance is given an option to purchase a
certain number of shares of the company's stock at a specified price
within a fixed period, which option is not mentioned in the policy.

2. SAME—*fact that option given insured was of no real value
is immaterial.* The obligation assumed by a life insurance com-
pany to sell to the insured within a fixed time, at a specified price,
a certain number of shares of stock of the company is in legal
contemplation a disadvantage to the company and the right ac-
quired by the insured to make the purchase is in legal contempla-
tion a benefit to him, and such obligation and corresponding bene-
fit or privilege constitute a valuable consideration, even though the
actual market value of the stock did not reach the price specified
in the option during its life.

3. SAME—*unconditional delivery of policy is a waiver of pre-
payment of premium.* If the insured gives a note for the first
premium and the policy is delivered unconditionally there is a
waiver of a provision of the policy that the policy shall not take
effect until the first premium is paid in full, and hence, in a prose-
cution for violating section 1 of the act of 1891 by giving the in-
sured an option not specified or mentioned in the policy, it is not
material whether the insured ever paid the note.

4. CONSTITUTIONAL LAW—*provision of act of 1891 prohibiting
giving insured any secret advantage is within title of act.* The
provision of section 1 of the act of 1891 (Laws of 1891, p. 148,)
that no life insurance company shall promise to give any advantage
or valuable consideration, not specified or expressed in the policy,
as an inducement to take out insurance, is reasonably adapted to
accomplish the main purpose of the act as expressed in its title,
which is to prevent unjust discrimination in rates between insur-
ants of the same class or grade and equal expectation of life, and
such provision is within the title of the act.

5. SAME—*act of 1891, to prevent unjust discrimination in rates,
is not invalid as giving special privilege to benefit societies.* The

fundamental distinction between life insurance companies and fraternal beneficiary societies authorizes the legislature to put such companies and societies in different classes for the purpose of police regulation, and hence the provision of the act of 1891 to prevent unjust discrimination in life insurance rates, which excludes fraternal beneficiary societies from the operation of the act, does not render the act invalid as granting a special privilege to such societies, in violation of section 22 of article 4 of the constitution.

6. SAME—*act of 1891 does not deprive life insurance companies of property without due process of law.* The act of 1891, to prevent unjust discrimination of rates between insurants of the same class or grade and with equal expectation of life, does not deprive life insurance companies of property without due process of law, as forbidden by the State and Federal constitutions.

7. SPECIAL INTERROGATORIES—*interrogatories relating to immaterial matters may be refused.* Special interrogatories calling for special findings upon immaterial matters are properly refused.

8. SAME—*when error in refusing proper interrogatory is harmless.* Error in refusing a special interrogatory asked by the defendant is harmless where the only finding the jury could have made under the uncontradicted evidence would have been in conformity with the plaintiff's proof.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

DYRENFORTH, LEE, CHRITTON & WILES, O'BRYAN & MARSHALL, and SHUTT & FAIN, (GEORGE A. CHRITTON, and WILLIAM N. MARSHALL, of counsel,) for appellant.

EDMUND BURKE, State's Attorney, A. M. FITZGERALD, and GEORGE B. GILLESPIE, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The People of the State of Illinois, upon the information of George J. Ambrose, brought an action of debt in the circuit court of Sangamon county against the Commercial Life Insurance Company, the appellant, to recover the penalty prescribed by section 3 of the act of June 19, 1891, entitled "An act to correct certain abuses and prevent un-

just discriminations of and by life insurance companies doing business in this State, between insurants of the same class and equal expectation of life, in the rates, amount or payment of premiums, in the return of premiums, dividends, rebates or other benefits," for the violation of said act. A trial was had before a jury, which resulted in a verdict finding the issues for the plaintiff and assessing the fine to be imposed on the defendant at $500. After overruling motions for a new trial and in arrest of judgment the court entered judgment on the verdict, from which the insurance company has appealed to this court.

Appellant is a corporation organized under the laws of this State and engaged in the life insurance business in this State, with its principal office in the city of Chicago. On October 25, 1907, an agent representing the appellant company called upon the informant, George J. Ambrose, in the city of Springfield, in this State, and solicited him to purchase a policy of insurance from appellant. Upon being told by Ambrose that he had all the insurance he desired, the agent stated, "We have got a side issue on this," and proceeded to explain to Ambrose that if he would take a policy, the company would, with each $1000 of insurance, give him an option to purchase, at any time within fifteen months, two shares of the capital stock of the company at the rate of $20 per share. The agent represented to Ambrose that this option was of great value; that when the company commenced business the stock was worth but $10 per share; that it was at the time of the conversation worth $20 per share, and that if Ambrose should not desire to purchase the stock at the expiration of the fifteen months, the agent would take the option off his hands at the rate of $1500 per share. He also represented that his son and daughter were following him and gathering up all stock certificates issued to persons who did not desire to keep them. As an illustration of the phenomenal increase in

value of insurance stock, the agent told Ambrose that every dollar invested in the stock of the Prudential Insurance Company in 1876 was now worth $1996. Thereupon Ambrose purchased from appellant, through this agent, a policy of insurance upon his life in the sum of $2000, the annual premium thereon being $44.40. The policy was delivered to Ambrose, together with an option, duly executed by the company, giving Ambrose the right to purchase four shares of the capital stock of the company at any time prior to February 1, 1909, at the rate of $20 per share, the par value of the stock being $10 per share, and Ambrose executed and delivered to the company his promissory note for the first premium. This note has not been paid.

The policy contained no reference to the option or to any right on the part of the insured to purchase shares of stock of the company, and it is contended by the appellee, and was held by the circuit court, that the proof of this transaction established a violation of the act of June 19, 1891, the title of which is above set out and the provisions of which are, in substance, as follows: Section 1 provides that no life insurance company or association organized under the laws of this State or doing business in this State shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life in its established rates or in the amount of premium charged or collected, or in the return of premium, dividends or other benefits accruing, or that may accrue, to such insurants, or in the terms and conditions of the contract between the company and the insurants, and requires the contract of insurance to be fully and wholly expressed and contained in the policy issued and the application therefor. The section concludes as follows: "Nor shall any such company or its agents pay, or allow, or offer to pay or allow to any person insured any special rebate or premium, or any special favor or advantage in the dividends or other

benefits to accrue on such policy, or promise the same to any person as inducement to insure, or promise to give any advantage or valuable consideration whatever, not expressed or specified in the policy of such company." Section 2 of the act provides that if any such life insurance company or association, its agent or agents, shall make any unjust discriminations, as enumerated in section 1, the same shall be deemed guilty of having violated the provisions of the act and dealt with as provided in section 3 of the act. Section 3 prescribes a penalty of not less than $500 nor more than $1000, to be recovered in an action of debt, upon any life insurance company or association which shall transact its business in this State in violation of the provisions of the act. The fourth and last section provides that the act shall not be construed to apply to fraternal associations dispensing aid or benefits to members or their heirs or legal representatives.

The particular provision of the act claimed by appellee to have been violated by appellant is the last clause of section 1, making it unlawful for any life insurance company to "promise to give any advantage or valuable consideration whatever, not expressed or specified in the policy of such company," appellee's contention being that the stock option which was promised to Ambrose as an additional inducement for purchasing the policy of insurance, and which was delivered to him with the policy, was an "advantage or valuable consideration" not expressed or specified in the policy. Appellant, on the other hand, contends that the act is directed against unjust discrimination alone, and its sole purpose is to prohibit a life insurance company from making different rates, by way of rebates or otherwise, between insurants of the same age and of equal expectation of life, and that in order to bring a transaction, such as the one proven in this case, within the prohibition of the act, it must not only appear that the advantage or valuable consideration was not expressed in the policy, but also that the

same was not offered or given to all policy holders of the same class and equal expectation of life, and upon this theory appellant interposed a special plea, setting up as a defense to the action that it had been its custom and practice to extend to each policy holder the right and privilege of purchasing two shares of the capital stock of the company with each $1000 of insurance at the price at which the same was selling at the time the policy was issued. A demurrer to this plea was sustained. Appellant attempted to prove the facts set up in this plea by the introduction of testimony upon the trial, but the court refused to permit such proof. The peremptory instruction offered by appellant at the close of the plaintiff's evidence in chief, and again at the close of all the evidence, presented the same question.

That the act of appellant in promising to give Ambrose the right to purchase four shares of its capital stock at any time prior to February 1, 1909, at the rate of $20 per share, is within the prohibition of the last clause of section 1 of the act is too clear to permit denial. That this promise by the company was the main inducement for the making of the contract of insurance by Ambrose is established by the evidence. The option was a valuable consideration moving from the company to Ambrose. By its delivery the company bound itself to sell to Ambrose, at any time prior to February 1, 1909, four shares of its capital stock at the rate of $20 per share, and by the same act conferred upon him the right to demand the transfer of such stock to him at any time within the specified period upon tender of the specified price. The obligation assumed by the company was in legal contemplation a disadvantage to it and the right acquired by Ambrose was in legal contemplation a benefit to him, for the reason that even though the market value of the stock should at some time during the fifteen months period exceed $20 per share, yet Ambrose would, by virtue of the option, have the right at such time to pur-

chase four shares at the rate of $20 per share. Any act which is a benefit to one party or a disadvantage to the other is a valuable consideration. (*Buchanan* v. *International Bank,* 78 Ill. 500; *Burch* v. *Hubbard,* 48 id. 164.) The disadvantage to the company by the assumption of this obligation, and the corresponding privilege or benefit conferred upon Ambrose, constitute the valuable consideration. It is therefore wholly immaterial that the option had no market value, or that the market value of the shares of stock did not, during the time the option was in force, exceed $20 per share, or that during such period Ambrose could have purchased stock of the company in the open market at a less sum per share, and evidence offered by the appellant to prove such immaterial facts was properly excluded.

Appellant contends, however, that a construction of the act which includes within its prohibition a transaction not amounting to a discrimination renders the act in that respect unconstitutional and void, because such prohibition would relate to a subject not expressed in the title of the act, in contravention of section 13 of article 4 of the constitution of this State. The main purpose of the act, as expressed in the title and as apparent from its provisions, is to prevent unjust discrimination between insurants of the same class and equal expectation of life, and any means reasonably adapted to accomplish that purpose is within the title of the act. (*Larned* v. *Tiernan,* 110 Ill. 173; *Cohn* v. *People,* 149 id. 486.) The constitution is obeyed if all the provisions relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. It is not required that the subject of the act shall be specifically and exactly expressed in the title or that the title should be an index of the details of the act. (*Ritchie* v. *People,* 155 Ill. 98; *Bobel* v. *People,* 173 id. 19; *Boehm* v. *Hertz,* 182 id. 154.) One of the most effective means

that could be adopted to prevent unjust discrimination between insurants is the requirement that each policy issued by the company shall contain every advantage or valuable consideration given by the company to the insurant. It imposes no hardship upon the company, but, by relieving the State of the burden of proving that some valuable consideration or advantage given to one or more insurants, but not expressed in the policy, was not given to all other insurants of the same class, is a valuable aid to the accomplishment of the main purpose of the act in rendering the enforcement of the provisions against unjust discrimination more effectual. The provision is reasonably adapted to accomplish the main purpose of the act and is auxiliary thereto, and is therefore within the title of the act.

Appellant contends that the act deprives life insurance companies of property without due process of law, in violation of the fifth and fourteenth amendments to the Federal constitution and in violation of section 2 of article 2 of the constitution of this State, and also contravenes section 22 of article 4 of the constitution of this State, prohibiting local or special laws granting to any corporation, association or individual any special or exclusive privileges, immunity or franchise whatever. The basis for this contention is the fact that the last section expressly excludes from the operation of the act fraternal associations dispensing aid or benefits to members or their heirs or legal representatives, thus imposing burdens and penalties upon life insurance companies which are not imposed upon fraternal associations. The constitutional provisions above mentioned do not prohibit the legislature from forming classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. (*Lasher* v. *People*, 183 Ill. 226; *Christy* v. *Elliott*, 216 id. 31; *Lowe* v. *State of Kansas*, 163 U. S. 81; *Missouri Pacific Railway Co.* v. *Mackey*, 127 id. 205.) The only question, therefore, necessary to be considered in dis-

posing of these constitutional questions is whether any distinction exists between insurance companies and fraternal associations which justifies the imposition of the burdens and penalties prescribed by the act upon the former and not upon the latter.

That there is a fundamental difference between life insurance companies, on the one hand, and those organizations commonly known as fraternal associations, fraternal beneficiary societies or mutual benefit societies on the other hand, requiring separate codes for the management and regulation of each, has been recognized by the legislature of this State and by this court ever since such associations or societies came into general use as a means of furnishing aid to members and to families of deceased members. The first legislative recognition of this distinction appeared in 1874 in the form of an amendment to section 31 of the act concerning corporations, under which act such associations or societies were then organized as corporations not for pecuniary profit, by which it was provided that "associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and where no annual dues or premiums are. required, and where the members shall receive no money as profit or otherwise, shall not be deemed insurance companies." This distinction has been consistently maintained by the legislature ever since, by declaring that such associations or societies shall not be deemed insurance companies, by expressly exempting them from the acts passed to regulate life insurance companies and by enacting separate codes for their organization and control. In *Railway Conductors' Ass'n* v. *Robinson,* 147 Ill. 138, we recognized such distinction and the propriety of treating such associations as a class distinct from life insurance companies in the following language: "The object and purpose of these provisions exempting mutual benefit associations from the character and status of insurance companies becomes apparent when

we examine the general insurance laws of the State, and especially the 'Act to organize and regulate the business of life insurance,' approved March 26, 1869. That act subjects every life insurance company incorporated or doing business in this State to a variety of rules, and requires of them the performance of various duties which would be both oppressive and inappropriate as applied to mutual benefit societies. Before any of these societies had been organized or any law enacted providing for their organization the legislature had passed general statutes providing for the organization and government of both fire and life insurance companies and for the regulation of the entire business of fire and life insurance, and requiring all companies engaged in that business to comply with the rules prescribed by those statutes. Subsequently, when mutual benefit societies began to be organized and that form of life insurance came into use, it became apparent that it would be impracticable to subject those societies to the same code of rules and regulations already in force for the government of the business of life insurance and that an essentially new system of rules was required."

That this distinction, which has at all times been observed in this State, is sound and that the act in question does not arbitrarily discriminate between persons in substantially the same situation is apparent when the purposes for which life insurance companies and fraternal associations are formed and their methods of doing business are considered. Life insurance companies are organized to engage in the business of insuring the lives of persons for profit. They are authorized to combine, and frequently do combine, with the contract of insurance other features, such as the payment of annual dividends to the insured, and the payment of the face of the policy, together with dividends, to the insured in case he survives a certain period. The whole scheme of such insurance is that of a business transaction between the company and the insurant in which the

object of the company is to obtain profit from the transaction, and there exists on the part of the company or its agents, in competing with other companies engaged in the same line of business, an incentive to reduce the profits in individual transactions, if necessary to obtain the business, by furnishing insurance at less than the established rate therefor or by giving some advantage or valuable consideration not given to other insurants of the same class and of equal expectation of life, thus creating inequality and making discrimination between policy holders. The primary object of fraternal associations is to obtain social intercourse among the members and to furnish relief and assistance to members and persons dependent upon them,—not upon a commercial or business basis, but upon the broad principle of friendship and brotherly love. The insurance feature is but an incident to the main purpose of organization. It is limited to the payment of benefits to members and to persons dependent upon them, and is conducted, not for the purpose of gain or profit to the association, but to further the benevolent purposes of its oganization. There being no element of profit to the association in the contract by which it agrees to pay to the member, or upon his death to certain persons dependent upon him, the amount specified in the benefit certificate, the incentive to give benefits or advantages to one which are not given to all is lacking.

For the reasons above indicated, the act in question does not contravene the sections of the Federal and State constitutions relied upon by appellant.

Appellant contends that the evidence failed to establish the agency of the person soliciting the insurance from Ambrose and the execution of the policy of insurance and stock option by the company. While no direct evidence was produced showing the appointment or authority of the agent or the execution of the policy or stock option by the company or the genuineness of the signatures thereto, the facts and circumstances proven upon the trial would satisfy any

reasonable mind of such agency and of the execution and issuance of the policy and stock option by appellant.

Appellant complains of the action of the court in refusing to submit to the jury special questions of fact, as requested by it. The first of these interrogatories asked the jury to find whether Ambrose paid for the policy in question. The evidence was uncontradicted that Ambrose had given to the company his promissory note for the amount of the first premium at the time the policy was delivered to him, but that the note had never been paid. One of the conditions of the policy was that it should not take effect until the first premium thereon had been paid in full, and appellant contended in the circuit court, and contends here, that the first premium not having been paid the policy was not in force, and, there being no valid policy existing, there could be no offense under the statute. An unconditional delivery of the policy, however, operates as a waiver of the pre-payment of the premium, notwithstanding an express provision therein that the company shall not be liable until the premium is actually paid. (1 Joyce on Insurance, sec. 79; 25 Cyc. 726; *Eclectic Life Ins. Co.* v. *Fahrenkrug,* 68 Ill. 463.) The special question of fact called for a finding upon an immaterial matter and was properly refused. The third and fourth interrogatories asked the jury to find whether the option had any market value, and if so, to state what that value was. For reasons already given these questions were wholly immaterial. The fifth and sixth of these interrogatories might properly have been submitted to the jury, but inasmuch as the questions thereby presented had been established by the plaintiff and had not been controverted by any evidence in the case, the finding of the jury thereon could only have been in conformity with the plaintiff's proof, and appellant was not prejudiced by the action of the court in refusing to so submit them.

Complaint is also made of the action of the court in refusing certain instructions offered by appellant. None of

them contained correct statements of the law applicable to the case, and they were therefore properly refused.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*