## Mary A. Dickinson, Defendant in Error, v. Elizabeth T. McKay, Executrix, Plaintiff in Error.

### Gen. No. 17,721.

1. STATUTE OF FRAUDS—*agreement depending on a contingency which may happen within one year.* Where defendant agrees to reimburse plaintiff for any loss incurred from signing a bond as security for the proper performance by defendant's son of the duties and obligations assumed in the purchase of a board of trade membership, it being possible that liability on the bond may accrue within one year, the agreement is not within the statute of frauds.

2. STATUTE OF FRAUDS—*when consideration is sufficient to make promise an original undertaking.* Any act which is a benefit to one party or a disadvantage to the other constitutes sufficient consideration to support an original contract.

3. DISMISSAL—*as to one of joint defendants.* Under Practice Act § 29, a suit in *assumpsit* may be dismissed as to one of joint defendants.

4. EVIDENCE—*where bond and written contract are admissible to explain oral contract.* In an action on· an oral contract, where defendant agreed to reimburse plaintiff for any loss incurred from signing a bond as security for the performance by defendant's son of a written contract, the bond and contract are properly admitted in evidence as tending to explain the entire transaction and to show conditions under which plaintiff might be compelled to pay.

Error to the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, JR., Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed February 13, 1913.

ELA, GROVER, MARCH & ECKERT, for plaintiff in error.

MARVIN E. BARNHART and EARL J. WALKER, for defendant in error.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Mary A. Dickinson, hereinafter called plaintiff,

brought suit and recovered a judgment against Eugene McKay, deceased, hereinafter called defendant, which judgment we are asked to reverse.

The material facts are, that in 1905 William McKay, son of the defendant, was employed by Vance & Company, a board of trade firm. The defendant was a brother-in-law of the plaintiff, having married her sister. Vance & Company and William McKay were mutually desirous that the latter should be the owner of a membership in the board of trade in order that he might operate on the floor of the board. William McKay was unable to purchase a membership, and he and Guy P. Vance, a member of Vance & Company, entered into a contract, dated December 5, 1905, by the terms of which Vance & Company were to procure a membership for McKay, who agreed to pay therefor as provided in the contract. It was, among other things, agreed that McKay should be employed by Vance at a stipulated salary, and McKay agreed to pay on account of said membership a note signed by the plaintiff, Mary A. Dickinson, due one year after date, for the sum of $300, and he was, among other things, to pay monthly instalments on account of the purchase price, beginning with December 15, 1905; and he also covenanted and agreed that he would not engage in any business on his own account, and to observe certain other rules. At the same time and as part of the same transaction, the plaintiff, Mary A. Dickinson, signed and delivered said note for $300, and also signed a certain bond of the same date, wherein William McKay was principal and Hattie B. McKay, Eugene McKay and the plaintiff were sureties. This bond was given as security to Guy P. Vance for the faithful performance of the duties and obligations undertaken by William McKay in the above described agreement. Plaintiff claims that she signed the note and the bond at the request of the defendant and upon his promise to indemnify her for any payments she might thereby become obligated to make. William McKay made practi-

cally none of the instalments of payment for the membership provided for in the contract, and on January 30, 1907, was in default thereon for a considerable amount. At this time the plaintiff, desiring to be released, paid her note for $300, held by Vance and mentioned in the contract, with accrued interest, amounting to $336.02, and endorsed a note of William McKay for $300, due one year after date, and was thereupon released from any further liability on the bond. At the same time Vance and William McKay made a new written agreement to the effect that McKay was in default on his payments and providing for a different method whereby he should pay for the membership. This new method included the delivery to Vance of the last described note for $300 endorsed by plaintiff. Subsequently plaintiff paid this note with two instalments of interest, making $318, the total payments made to Vance by her on account of liability under the bond being $654.02. Afterwards the membership was sold for an amount sufficient not only to pay Vance what was due him, but also the defendant, Eugene McKay, for payments he had made, leaving a balance of about $300, presumably retained by William McKay. Plaintiff sued the defendant to recover the amounts she had paid because of the obligation she had incurred under the bond, which she had signed relying upon the promise of the defendant to reimburse her for any loss she might incur. The judgment was for $325.

It is first urged as ground for reversal that the alleged agreement of defendant to reimburse plaintiff was a verbal contract not to be performed within a year, and therefore barred by the statute of frauds. The bond was given as security for the proper performance by William McKay of all the duties and obligations by him in the agreement with Vance to be performed, and to save Vance harmless from any and all acts of omission on the part of McKay, and to reimburse Vance for all loss and damage he might sustain by reason of said agreement or any act or trans-

action growing out of the same. By the agreement referred to, we find that McKay obligated himself to do many things within one year thereafter, a breach of which would impose a liability on the bond. He obligated himself to pay certain instalments in each month during the year following the date of the agreement. He was also obligated not to engage in any business on his own account, and to observe the rules referred to in section 6 of the agreement. It follows, therefore, that the liability of the plaintiff on the bond might have accrued within one year after signing same. Indeed, we gather from the record that there was a default in the payment of the monthly instalments within a very short time after this date, and probably none of them was paid.

In Cyc, vol. 20, page 200, the rule is correctly stated as follows: "An oral agreement the performance of which is dependent upon the happening of a certain contingency is not within the statute if the contingency is such as may occur within one year; and this is true, although the contingency may not in fact happen until after the expiration of the year, and although the parties may not have expected that it would occur within that period. It is sufficient if the possibility of performance within the prescribed time existed."

And in Birks v. Gillett, 13 Ill. App. 369, 375, the court said: "Nor is the contract void because it was not to be performed within a year from the making of it, for the reason that the contingency, which might have put an end to it, might have happened within one year from that time."

A case directly in point is Blake v. Cole, 22 Pick. (Mass.) 97, where the court said:

"But the bond in the case at bar might be forfeited for breaches within the year; and such forfeiture would have rendered the sureties liable to a judgment for the penalty * * * and other causes of forfeiture might have happened within the year, which would have subjected the sureties to judgment for the whole

penalty of the bond. * * * The statute does not embrace cases which *may* be performed in a year, or which depend on a contingency. It must be an express and specific agreement *not to be performed in one year,* to come within the act. If it may be performed within the year, it does not come within it.''

As this correctly states the rule, we are of the opinion that the statute of frauds is not applicable in this case.

It is next argued that no consideration passed from the plaintiff to the defendant; that therefore it is not an original undertaking, as under the statute an oral promise to answer for the debt of another, which is not an original undertaking, cannot be enforced. It has been repeatedly held in this state that it is not indispensible that the consideration should pass directly to the promisor, but any act which is a benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support a contract. Buchanan v. International Bank, 78 Ill. 500; Milby v. Mowry, 125 Ill. App. 417; Ruehle v. Montelius, 149 Ill. App. 416; Hughes v. Sprague, 4 Ill. App. 301; and in People v. Commercial Ins. Co., 247 Ill. 92, 98, where the court lays down the general rule that ''any act which is a benefit to one party or a disadvantage to the other is a valuable consideration.'' It might also be held upon the authority of Thomas v. Cook, 8 Barn. & Cress. English Common Law Reports, page 358, that this was an original contract between the plaintiff and the defendant.

It is next contended that plaintiff did not commence her suit within the time required by the statute of limitations, and it is claimed that this suit was started more than five years after defendant requested plaintiff to sign the bond, five years being the limitation under the statute. In support of this claim defendant refers to certain orders appearing in the abstract, but an examination discloses nothing as to when these various orders were entered, so that we have nothing be-

fore us from which we can arrive at any conclusion as to the correctness of defendant's claim. From what does appear in the abstract we see nothing to convince us that defendant's point has merit.

The suit was originally started against William and Eugene McKay, but was afterwards dismissed as to William McKay, and it is claimed that in an action of *assumpsit* the judgment must be against all or none of the defendants. While this may have been the former rule, it is the rule no longer. Section 39 of the Practice Act permits the discontinuing of a case as to any joint defendant, and this practice has frequently been approved. Black v. Womer, 100 Ill. 328; McChesney v. Davis, 86 Ill. App. 380; Scanlon v. People, 95 Ill. App. 348; Beidler v. Richardson, 107 Ill. App. 536.

As to alleged errors in the admission of evidence, we do not think they are sufficiently serious to warrant a reversal. The bond and contract admitted in evidence were proper as tending to explain the entire transaction, and especially as furnishing the necessary evidence as to the conditions under which plaintiff might be compelled to pay. The testimony of the witness Brutch was competent as showing an admission by defendant against interest, and we see no reversible error in the ruling of the court in sustaining an objection to proof as to matters of settlement in plaintiff's divorce suit.

The case on the evidence was peculiarly one for the consideration of the jury, and this court will not disturb the verdict unless it appears manifestly against the weight of the evidence. We are not able to so conclude, and will not disturb the judgment of the jury as to the credibility of the witnesses. Holding as we do, that we cannot say that the verdict is manifestly wrong, and finding no reversible error upon the trial, the judgment will be affirmed.

*Affirmed.*