## Farmers National Bank of Princeton, Illinois, Appellee, v. Anson Rosenkrans, Appellant.

### Gen. No. 7,558.

1. NEGOTIABLE INSTRUMENTS—*forbearance to press payment of note whereon comaker's name forged as consideration for individual note of such comaker,* Good consideration for the giving.

of a note is shown by proof that it was given in consideration of forbearance or extension of time for payment of another note whereon it was claimed that the maker's name had been forged.

2. NEGOTIABLE INSTRUMENTS—*what constitutes sufficient consideration for note.* It is not indispensable that the consideration for a note shall have passed directly to the promisor, but any act which is a benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support the contract.

3. CONTRACTS—*validity of note given in consideration of forbearance to enforce payment of note on which maker's name forged as comaker.* A note given in consideration of the agreement of the payee to forbear pressing for payment of another note signed by his son-in-law and daughter and bearing the forged signature of the maker of such second note, is not void as given to compound a felony, although as a result of the giving of such second note there was no prosecution for the alleged forgery, where it was manifest that the said maker was an active and intelligent business man, acting without compulsion and with full understanding of the purpose of the transaction.

Appeal by defendant from the Circuit Court of Bureau county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed April 3, 1926.

R. L. RUSSELL and H. A. BROOKS, for appellant.

J. L. SPAULDING, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

Farmers National Bank of Princeton, Illinois, appellee, obtained judgment by confession in the circuit court of Bureau county against Anson Rosenkrans, appellant, upon a judgment note for $5,000, dated August 30, 1921.

The note declared upon reads as follows:

"Princeton, Illinois.  August 30, 1921.  $5,000.00.

"Two years after date, for value received, I promise to pay to the order of Farmers National Bank of Princeton, Ill., Five Thousand and No-100 Dollars at said Bank, with interest at seven per cent per annum from maturity. (Here follows warrant of attorney authorizing confession of judgment at any time after

date of note.)   This note is given to secure a note and any renewals thereof, dated April 12, 1921, due six months after date, signed T. Clyde Strait, Anson Rosenkrans and Mrs. T. Clyde Strait.

(Signed)   Anson Rosenkrans.''

After judgment was obtained by confession on said note, appellant made a motion to open up the judgment and to be permitted to plead.   The motion was allowed and appellant filed a number of pleas.   The defenses relied upon by appellant are that there was no consideration for the note, that the bank was guilty of compounding a felony and that appellant Rosenkrans executed the note under duress.   A trial was had by the court, without the intervention of a jury, and the court found for appellee and against appellant and rendered judgment accordingly for the sum of $5,766.-39, from which judgment appellant prosecutes this appeal.

The evidence shows that Mrs. T. Clyde Strait, who was the wife of T. Clyde Strait, was the daughter of appellant, who lived at Paw Paw, Lee county, Illinois, about forty miles from Princeton, Illinois.   Strait and his family lived on a farm near the village of Lamoille, which was about half way between Princeton and Paw Paw.   On April 12, 1921, appellee held several notes against Strait and wife amounting to $4,144.50 for money loaned.   Strait applied to appellee to increase the debt to $5,000, stating that he would give the appellee a new note and have his wife and appellant sign as security.   On that date a judgment note for $5,000 due six months after date was drawn and delivered to Strait.   On the following day Strait returned to the bank with the note and it appeared to be signed by Strait first, appellant second, and Mrs. Strait third. Upon the delivery of the note the appellee canceled and delivered to Strait the old notes and placed to his credit in the checking account $853.50.   On August 29, 1921, appellee received a letter from Strait asking for a re-

newal of the note until the following December at which time he promised to pay $2,500. On the same date this letter was received from Strait, appellee wrote to appellant informing him that it held a note for $5,000 signed by him and Mr. and Mrs. Strait, which note would be due October 12, and that the appellee had received word from Strait asking for a renewal of the note until December, at which time he would pay $2,500 and stating that if it was satisfactory to appellant the bank would grant the extension. On the next day, August 30, 1921, appellant went to the bank and had a talk with L. R. Davis, the president, and A. W. Anderson, the cashier, in which appellant stated that his name had been forged to the note. There was considerable discussion between the parties with reference to the seriousness of the charge and the effect it would have upon Strait and his family. Appellant offered appellee $2,000 to surrender the note, which was refused. He then offered $3,000, which was also refused. The officers of appellee then suggested that the bank would be willing to take a note for $5,000, due in two years, signed by appellant securing the payment of the forged instrument. After further discussion appellant agreed to execute this note and it is claimed by appellee that it was then agreed that both notes should be held by appellee and that appellee was to collect from Strait whatever amounts could be secured, and any payments made should be indorsed upon both notes. There is some dispute as to whether it was at that time agreed that the question of this forgery should be kept a secret so as not to injure Strait and his family. A note for $5,000, dated August 30, 1921, due in two years, was then prepared and was signed by the appellant. After the judgment clause was the following: "This note is given to secure a note and any renewals thereof dated April 12, 1921, due six months after date, signed T. Clyde Strait, Anson Rosenkrans and Mrs. T. Clyde Strait."

Strait did not pay $2,500 in December, and shortly before January 1, 1923, made a sale of all his property and removed with his family from the State. From August 30, 1921, to April 18, 1923, there was some correspondence between appellee and appellant with reference to the note, but after Strait and his family left the State appellant notified appellee that he considered the incident closed and he was not liable to appellee in any amount.

The note for $5,000 dated April 12, 1921, which appellant claims was a forgery, was declared upon by appellee and appellant defended upon the ground that he did not execute the same. Judgment, however, was obtained in the circuit court of Bureau county and an appeal was prosecuted to this court where the judgment of the circuit court was reversed and the cause remanded. The opinion is reported in 232 Ill. App. 632. In the decision in that case the court, among other things, said:

"* * * The next question is whether or not the evidence admitted tending to show ratification was sufficient to make appellant liable for the payment of the forged note. It must be conceded that appellant did not sign this note. He repudiated it from the beginning. He first offered $2,000 for its surrender. He then offered $3,000. Both offers were refused. These offers were not agreements to pay and did not constitute a ratification. Appellee then suggested that appellant sign a new note for $5,000 due in two years, securing the payment of the forged note or any renewal thereof, and the new note was executed. In connection with this new note it was agreed that appellee should collect from Strait what he could on the forged note and any payments made were to be credited on both notes. The fact that nothing was collected or credited does not change the effect of the agreement. Any balance due was to be paid by appellant on the new note. He did not recognize or ratify the forgery. He ex-

pressly repudiated it. He executed his own note in lieu thereof, and by so doing made himself personally liable to pay the $5,000, not upon the forged note, but upon the note which he personally executed. For this reason the evidence admitted did not show a ratification of the forged note so as to make the appellant personally liable thereon, but the evidence did show that a new note was given by appellant and upon this new note his liability must be based.''

It is evident that the main thing which appellant desired was that secrecy should be maintained in order that his son-in-law and daughter might not be known as forgers. He gave the note involved in this case to the bank in order to protect the names of his family. When he executed the $5,000 note in controversy he was asked if he did not want the forged note and he said, ''I would rather have you keep the note. I feel you can collect the money better than I can.''

Forbearance, or extension of time for payment of the note on which appellant claimed his signature was forged was a good consideration for the giving of the note declared upon in this proceeding. *Commercial State Bank v. Folkerts*, 200 Ill. App. 385-390; *Mc-Micken v. Safford*, 197 Ill. 540; *Spalding v. White's Estate*, 184 Ill. App. 217.

It is not indispensable that the consideration should pass directly to the promisor, but any act which is a benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support a contract. *Schlatter v. Triebel*, 284 Ill. 412-415; *Dickinson v. McKay*, 177 Ill. App. 412-416; *People v. Commercial Life Ins. Co.*, 247 Ill. 92-98.

If there was any benefit or advantage passing to the son-in-law or daughter of appellant by reason of his executing and delivering to the appellee bank of the note declared on, such benefit or advantage constituted a sufficient consideration to sustain it. *Schlatter v. Triebel*, 284 Ill. 412-415; *Dickinson v. McKay*, 177 Ill.

App. 412-416; *People v. Commercial Life Ins. Co.*, 247 Ill. 92-98.

We are of the opinion there is no merit in the contention of appellant that there was no consideration for the execution of the note in question.

It remains to be determined whether or not the bank was guilty of compounding a felony and whether or not the note was executed under duress.

The use of criminal process as a means of collecting private indebtedness is illegal and contracts so obtained are contrary to public policy and unenforceable. *Shenk v. Phelps*, 6 Ill. App. 612. All the authorities hold that an agreement to compound a felony will not be enforced and that any security based upon such consideration is void. 3 R. C. L. 957. And if the original note or security is void, its surrender could be no consideration for a new note between the same parties. 3 R. C. L. 964-65. But it is not illegal merely to compromise the civil injuries resulting from a criminal act where it is not expressly or impliedly agreed that the prosecution for the crime is to be prevented or suppressed and a note given in consideration of moneys embezzled is valid and enforceable, there being no agreement to conceal or suppress a prosecution for the offense. 3 R. C. L. 958. The true rule seems to be that notwithstanding the pendency of criminal proceedings against a wrongdoer one whose money or property has been fraudulently obtained may contract for repayment of the money or satisfaction for the loss sustained and take security therefor, without invalidating the contract, unless there be included therein, as a part of the consideration therefor, some promise or agreement, express or implied, that such prosecution shall be suppressed, stifled or stayed. *Northfork Board of Education v. Angel*, 75 W. Va. 747, 84 S. E. 747, L. R. A. 1915E 139.

In *Ford v. Cratty*, 52 Ill. 313, the defendant Ford had embezzled a considerable sum of money from plaintiff's

intestate, Frederick Furch, who procured a warrant for his arrest and this warrant was shown to Ford and he was informed that he must settle or secure the amount due or the prosecution would be pushed to a conclusion. Ford, thereupon, with the other defendants, executed the note sued upon. In affirming the judgment of the lower court in favor of the plaintiff and after quoting the statute the Supreme Court said, "This last section authorizes the injured party to reclaim his property or receive compensation for the wrong done to him. * * * In this case, Furch did no more than receive that compensation when he obtained the note. There is no pretense that Ford had not collected the money and still owed it to him. He had a right to receive the note, and whatever may be said of the means employed in obtaining it, we cannot hold that it was received to compound a criminal offense. * * * Here the note was given, not as a reward for not prosecuting but for a debt due from Ford to Furch, and that being the only and true consideration, it is not like a note given simply to prevent the prosecution for a misdemeanor or felony."

In *Rudolph Stecher Brewing Co. v. Carr,* 194 Ill. App. 32, Frank Sarafin had purchased beer of the brewing company and in payment therefor had executed and delivered to them two checks aggregating $502.32. These checks had been sent to an attorney for collection and he had determined from the facts stated to him that Sarafin had been guilty of the crime of confidence game in giving such checks and after consulting with the State's Attorney a complaint was filed and Sarafin arrested. At the hearing he waived examination and was bound over on his own recognizance to the grand jury and gave to the brewing company a check for $502.32, which was indorsed by Carr. The check not having been paid, suit was instituted against Carr. The trial court held that the check was given for the compounding of the crime of confidence game

and therefore void. In reversing this judgment the Appellate Court, after commenting upon the fact that the evidence tended to show that the brewing company, by its agent, consented in consideration of the check being given, that Sarafin could go on his own recognizance, said: "even if Levy (the agent of the brewing company) did consent that he might go upon his own recognizance and did not agree that Sarafin would not be prosecuted further, this would not be sufficient to defeat this action, for the mere consenting for the defendant to go upon his own recognizance would not be the compounding of a crime. We think it is quite clear from this evidence that the check in question was not given as a reward for not prosecuting, but was rather in payment of the debt, and that if consent was given that he might go upon his own recognizance it was a mere incident and would not of itself be sufficient to warrant a court in saying that it was compounding a crime."

In *Goacher v. Bates,* 280 Ill. 372, the complainants filed their bill to set aside deeds whereby they had conveyed certain real estate to defendants. The evidence disclosed that Goacher had swindled the defendant Bates, who was a banker, out of a considerable sum of money, and Bates had employed the State's Attorney to assist him in collecting it and they had gone to the home of the father and mother of Goacher, informed them of the amount of the indebtedness of their son at the bank and stated to them that the son had procured such sum by means of false pretenses and in a later conversation Bates stated that he would rather prosecute the son criminally and send him to the penitentiary than to go ahead with a proposed settlement. However, the matter was settled and the conveyances made which were sought to be set aside and as part of the settlement Bates signed an agreement not to prosecute the son on a criminal charge. In affirming the de-

cree of the chancellor who held that the conveyances to Bates were valid the court at page 383 said:

"While it is true that Bates made various threats during the progress of these negotiations and up to the time of settlement, the negotiations consumed several days and the Goachers were all adults and had ample opportunity for consultation and reflection. Lennie (the son) and his brother, at their father's suggestion, consulted an attorney, and he informed them no crime had been committed and that Lennie was in no danger of criminal prosecution. After receiving the benefit of this advice the Goachers continued their efforts to secure a settlement and made numerous propositions of settlement to Bates until finally he agreed to settle the matter upon the conveyance of the real estate. * * * We are of the opinion that there was no such fraud or duress used as would affect the transaction. The plaintiffs in error were all adults, of sound mind, consulted together among themselves with their friends and legal adviser and insisted upon making the settlement which they are now seeking to have set aside."

In the instant case appellant was an intelligent and an active business man. He was evidently a man of considerable experience and under the conditions and circumstances as disclosed by the evidence he signed the note knowing and understanding the purpose for which it was executed.

We are of the opinion that there was a consideration for the note, that appellee did not compound a felony nor was the note executed under duress. There is no reversible error in the holding or the refusing of propositions of law.

The judgment, therefore, of the circuit court of Bureau county will be affirmed.

*Judgment affirmed.*